567 A.2d 695

**MILLER BLOCK COMPANY; Miller Block Company, Inc.; James R. Walsh, Esquire, Trustee of the Bankrupt Estate of Miller Block Company, Otherwise Miller Block Company Inc.; Dean W. Miller; and the Estate of Frederick C. Miller, Deceased,**

v.

**UNITED STATES NATIONAL BANK IN JOHNSTOWN, a National Banking Association; United States National Bank in Johnstown, a Corporation, and Usbancorp, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued Aug. 22, 1989.

Filed Dec. 11, 1989.

462

Dennis S. Mulvihill, Pittsburgh, for U.S. Nat. Bank, appellants.

Norman A. Krumenacker, Jr., Johnstown, for appellees.

Before CAVANAUGH, BROSKY and ROWLEY, JJ.

ROWLEY, Judge:

This is an appeal by United States National Bank in Johnstown (Bank) from an order denying its motion to strike or open a default judgment entered in an action commenced by Miller Block Co. seeking damages for wrongful repossession by the Bank of some chattels. After thoroughly reviewing the record and the arguments of the parties, we reverse.

On August 3, 1987, the complaint was filed in the instant case. Thereafter, there were four letters exchanged by counsel regarding an extension of time within which to file a responsive pleading, the last of which was from counsel for appellees and advised counsel for the Bank that he should file the responsive pleading by October 6, 1987. On October 2, 1987, the Bank filed a removal petition in U.S. District Court to have the case transferred to federal court. On October 7, 1987, default judgment was entered in state court, but no notice of the default judgment was given to the Bank until March, 1988. On March 4, 1988, the federal court denied the Bank's removal petition and remanded the case to the Pennsylvania courts. On March 18, 1988, the instant petition to strike/open the default judgment was filed and was subsequently denied. The instant appeal followed.

On appeal, the Bank raises numerous arguments in support of its assertion that the default judgment should have been stricken or opened. First, it claims that the Pennsylvania court was without jurisdiction to entertain the default judgment on October 7, 1987, because the federal removal

petition had been filed on October 2, 1987, and under the federal removal statute, 28 U.S.C.A. § 1446(e), the filing of a removal petition bars state court jurisdiction until the case is remanded to the state court. The Bank also argues that there was no written agreement between the parties for an extension of time to file a responsive pleading and consequently, the default judgment entered without prior notice, as required by Pa.R.C.P. 237.1, should be stricken. Alternatively, the Bank argues that the judgment should be opened because its petition to open was timely filed, it presented a legitimate reason for not having filed a responsive pleading, and it has sixteen meritorious defenses. The Bank also claims that the judgment should be stricken/opened because Miller Block, which had filed a Chapter 11 bankruptcy petition, failed to obtain from the bankruptcy court the requisite permission to file the instant case. In addition, the Bank argues that the judgment should be stricken/opened because Miller Block's complaint failed to state a cause of action against the defendants. Finally, the Bank asserts that the judgment must be set aside because service was deficient.

## I. JURISDICTION

The federal removal statute provides that the filing of a petition for removal and the filing of the requisite bond, with notice to the parties and the filing of a copy of the petition in the state court, "shall effect the removal and the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). In the present case it is undisputed that the removal petition and bond were filed on October 2, 1987, that notice was provided to the parties, and that a copy of the removal petition was timely filed in the state court. It is also undisputed that the removal petition was denied in March, 1988. Thus, the issue before us is whether or not the removal petition operated to divest the state court of jurisdiction between the time the petition was filed and the time it was denied.

Where a case is remanded to the state court upon denial of a removal petition, it is for the state court to determine the effect of the attempted removal on state court jurisdiction. See *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 361 Pa.Super. 137, 522 A.2d 52 (1987). The Pennsylvania Supreme Court has held that the federal removal statute

"is subject to strict construction and its provisions must be strictly complied with before the jurisdiction of a state court can be ousted: [citations omitted.] When a removal has been effected *in strict compliance with the statutory requirements*, then the state court's jurisdiction ceases and any further proceeding in the state court is a nullity so long as the action is pending in the federal court."

*Crown Const. Co. v. Newfoundland American Ins. Co.*, 429 Pa. 119, 124, 239 A.2d 452, 455 (1968) (emphasis in original). However, where there has not been strict compliance with the removal statute, or where the removal is subsequently determined to be invalid for lack of subject matter jurisdiction, proceedings in the state court between the filing of the removal petition and its denial are valid. See *Metropolitan Casualty Ins. Co. v. Stevens*, 312 U.S. 563, 61 S.Ct. 715, 85 L.Ed. 1044 (1941); *Yankaus v. Feltenstein*, 244 U.S. 127, 37 S.Ct. 567, 61 L.Ed. 1036 (1917); *Wenrick, supra.* This is the logical corollary of the rule that if the removal is valid, any interim proceedings in the state court are void. *Metropolitan Casualty Ins. Co., supra.*

Applying these rules to the facts in the present case, we conclude that the state trial court was not divested of jurisdiction upon the filing of the removal petition because there was not strict compliance with the requirements of the removal statute, and because the federal court determined that the removal was invalid for lack of subject matter jurisdiction.

The federal removal statute requires that the removal petition be filed in federal court within thirty days after

receipt by the defendant of the initial pleading setting forth the claim for relief upon which the action is predicated. However, if it is not apparent from the initial pleading that the case is removable, the case may be removed by the defendant within 30 days after receipt by the defendant of an amended motion, pleading, order, or other paper from which it can be determined that the case is removable. 28 U.S.C. § 1446(b).

It is undisputed that the removal petition in the present case was not filed within 30 days of the Bank's receipt of the complaint. However, the Bank argues that "because of recent receipt of documents relating to the prior bankruptcy proceedings of Miller Block Company" (appellants' brief at 17) and a 1985 lawsuit filed by Miller Block against the Bank in state court, but removed to federal court because of the bankruptcy proceedings, it was timely for it to file the removal petition on October 2, 1987. We agree with the federal court which considered the removal petition filed in the instant case that there was not a legal basis for extending the 30 day time limit of § 1446(b).

To the extent that the Bank was relying on the bankruptcy proceedings to provide the basis for removal, its argument is unfounded because the bankruptcy proceedings were terminated by court order *prior* to the commencement of the instant suit. The Bank also argues that the removal petition was timely filed because it had "recently" learned that the prior action by appellees against the Bank (*Miller I*), which had been removed to federal court because of the bankruptcy proceedings, was still active. However, the Bank has not specified what information it "recently" received which led it to believe that the first federal action was still pending, thereby serving as a basis for removal of the instant case and consolidation of it with the prior action. Nor has the Bank specified when it obtained this information. Because the Bank has not indicated when the information was obtained, it has failed to establish that the removal petition was filed within 30 days of receipt of that information. Moreover, since the Bank in the present case

was the party responsible for removing *Miller I* to federal court, the validity of its claim that it was unaware of the status of *Miller I* is suspect. For these reasons, we find that the removal statute was not strictly complied with, and consequently the filing of the removal petition failed to divest the state court of jurisdiction.

In the present case, the federal court to which the Bank tried to remove the case held not only that the removal petition was filed untimely, but also that the federal court did not have subject matter jurisdiction of the case because: 1) the prior federal bankruptcy of Miller Block had been terminated prior to the commencement of the instant litigation; and 2) no federal claim under the federal banking laws and regulations appears on the face of the complaint. In addition, *Miller I* could not provide jurisdiction in the present case.

Long before the instant action (*Miller II*) was commenced, *Miller I* had been terminated by an order of the federal court which provided: "should further proceedings become necessary or desirable, any party may initiate it in the same manner as if this Order had not been entered." Between the entry of the order terminating *Miller I* and the filing of the removal petition in *Miller II*, no party took any action to re-activate *Miller I*. Thus, at the time that the *Miller II* removal petition was filed, there was no active federal case with which *Miller II* could have been consolidated. Furthermore, the federal court noted that a complaint was never filed in *Miller I*, and that there was "insufficient evidence to indicate ... what those claims [in *Miller I*] were." Opinion by Judge Cohill, March 14, 1988, at p. 4. Thus, even if *Miller I* had been active in federal court when the removal petition in *Miller II* was filed, it is not clear that there would have been a basis for subject matter jurisdiction in federal court with regard to *Miller II*.

Having concluded that the state court was not divested of jurisdiction upon the filing of the removal petition both because there was not strict compliance with the requirements of the removal statute and because the federal court

subsequently denied the removal petition for lack of subject matter jurisdiction, we turn now to the Bank's other arguments for opening or striking the judgment.

## II.  STRIKING THE JUDGMENT FOR NON–COMPLIANCE WITH RULE 237.1

■ The Bank argues that there was no written agreement by counsel for the parties to extend the time for filing a responsive pleading, and that therefore Miller's failure to provide written notice of intention to enter the default judgment was in violation of Rule 237.1.  As set forth in the trial court's opinion, we agree that the four letters between counsel, when viewed in their totality, constitute a written agreement giving the Bank an extension to file a responsive pleading by October 6, 1987.  As Rule 237.1 requires, the extension was in writing, it set a specific date, and there was agreement by the parties for the extension.  Mr. Mulvihill's letter of September 16, 1987, makes clear that the parties had already agreed to an indefinite extension, and that by the time of the parties' meeting on September 22, 1987, he would be in a position to prepare the responsive pleading.  Mr. Krumenacker's letter of September 22, 1987, apparently written after the parties' meeting of the same date, confirms the parties' agreement to limit the extension for filing of the responsive pleading to October 6, 1987.

■ The Bank also argues that even if there was a written agreement, it was essential that in addition to the written extension agreement, the Bank also had to be given notice of the intent to take the default judgment.  The express language of Rule 237.1 belies such an argument.  The express purpose of the written extension exception to the Rule 237.1 notice is to obviate the need for the written notice of intent to take a default judgment.

■ The Bank's argument that the parties, as distinguished from their counsel, had to receive copies of the letters evidencing the written extension agreement between counsel in order for the appellees to be excused from

sending a Rule 237.1 notice is equally without merit. The explanatory note to Rule 237.1 makes clear that the written extension of time which is necessary to overcome the default notice requirement is an agreement by and between counsel. Nothing in the Rule or the explanatory note even hints that the parties themselves must be provided copies of the extension agreement letters. For the foregoing reasons, we find that Rule 237.1 was complied with and the judgment should not have been stricken.

### III. REQUIREMENTS FOR OPENING DEFAULT JUDGMENT

The Bank argues that the three requirements for opening a default judgment have been met. We agree.

A petition to open a default judgment will be granted when three factors coalesce: 1) the petition has been promptly filed; 2) the default can be reasonably explained; and 3) there is a meritorious defense to the underlying claim. *Versak v. Washington*, 359 Pa.Super. 454, 519 A.2d 438 (1986). However, a petition to open a default judgment is an appeal to the equitable powers of a court, and the trial court's decision will not be reversed in the absence of an abuse of discretion. Nevertheless, where the equities warrant opening a judgment, we will not hesitate to find an abuse of discretion. *Id.; Provident Credit Corp. v. Young*, 300 Pa.Super. 117, 446 A.2d 257 (1982) (en banc).

The trial court erred as a matter of law when it denied the petition to open solely upon the finding that there was no excuse for the delay in filing the responsive pleading. In *Provident, id.*, 300 Pa.Superior Ct. at 129–130, 446 A.2d at 263–264, the Court stated:

> Without question, in many cases where we have found that one of the three requirements for opening a judgment was not met we have stopped without considering the arguments made with regard to the other two. [Citations omitted.] It is difficult, however, to reconcile this approach with the many other cases that emphasize the

> equitable nature of the decision whether to grant a petition to open, and the importance of balancing the prejudice to the two sides.... The question is, Can a court make an "equitable determination" of what is "reasonable under the circumstances" without considering *all* of the circumstances of the particular case? We think not.... [W]here some showing has been made with regard to each part of the test, a court should not blinder itself and examine each part as though it were a watertight compartment, to be evaluated in isolation from other aspects of the case. Instead the court should consider each part in the light of all of the circumstances and equities of the case. Only in that way can a chancellor act as a court of conscience.

(Emphasis in original.) Because the trial court in the present case never considered two of the three prongs of the tripartite test, and because it did not evaluate the equities involved in each of those three prongs, we find that the trial court's refusal to open the default judgment was an abuse of discretion.

In the present case, the instant petition was filed in March, 1988, five months after the default judgment was entered. However, neither the Prothonotary nor the appellees provided the Bank notice that the default judgment had been entered. Moreover, although counsel for the parties discussed the case after the entry of the default judgment and prior to the filing of the petition to open, counsel for appellees never told the Bank that the default judgment had been entered. There is a factual dispute, established by the affidavits of counsel for the parties, concerning when the Bank first learned of the default judgment. Based on the evidence submitted on the petition to open, we find that the Bank did not receive notice of the default judgment until March, 1988. Consequently, the filing of the petition to open in March, 1988, was timely.

We also have no hesitation in concluding that the Bank has averred a meritorious defense to the underlying claim. In its petition to open and in its brief on appeal, the Bank

has alleged 16 defenses. While not all of the defenses asserted may be meritorious, at least several of them are, such as the claim that the Bank had a valid security interest in the property, did not intimidate, harass or interfere with appellees' business, and did not take possession of the property with force and intimidation. Although appellees argue that they have denied all the allegations of a meritorious defense, and therefore the Bank is bound by appellees' denial of the defenses, we note that the Bank did not have the obligation to prove the merits of the defenses they raised. "The requirement of a meritorious defense is only that a defense must be pleaded that if proved at trial would justify relief." *Provident Credit Corp., supra,* 300 Pa.Superior Ct. at 128, 446 A.2d at 263. Because the Bank has pleaded a defense which if proven at trial would justify relief, we conclude that the Bank has sufficiently alleged a meritorious defense.

The third prong of the test for opening a default judgment is whether there is a reasonable excuse for the default. The Bank's sole explanation for the default is that it was not given adequate notice of the intent to take a default judgment. As discussed, above, this argument, standing alone, is insufficient to warrant striking the judgment because it was not necessary that actual notice of the intent to take a default judgment be given in the present case. However, considering all the *equities* disclosed in the present record, we conclude that there was a reasonable excuse for the default and that it was an abuse of the trial court's discretion not to open the judgment.

Appellees were fully aware that the Bank was working on the case, and attempting to respond to the complaint which had been filed. As the correspondence of counsel makes clear, counsel discussed the case and twice agreed to an extension of time so that a responsive pleading could be filed by the Bank. In addition, on September 22, 1987, counsel for both parties and an insurance company representative met to discuss the case.

Not only were appellees made aware in the present case that the Bank intended to defend against the claims asserted, but the parties' enduring litigious relationship (since at least *Miller I*) evidences that the default judgment entered in this case immediately upon the termination of the extension period was a misuse of the default judgment procedure. "The rules permitting the entry of default judgments were designed to prevent a dilatory defendant from unreasonably thwarting plaintiff's efforts to establish a claim. They were not intended to provide the plaintiff with a means of gaining a judgment without the difficulties which arise from litigation." *Bildstein v. McGlinn*, 320 Pa.Super. 416, 420, 467 A.2d 601, 603 (1983).

In *Miller I*, which was an action by appellees against the Bank, and which presumably involved claims at least similar to those in the instant case, appellees knew that the Bank had defended in that case at least to the extent of removing the case to federal court. It also is not clear why, if the bankruptcy action did not resolve the present dispute between the parties, appellees did not pursue their present claim against the Bank by reviving *Miller I* as the federal court had expressly provided for in its order terminating *Miller I*. We also find it significant that appellees did not move to dismiss *Miller I* and thereby permanently terminate the federal action against the Bank until *after* the removal petition was filed in the present case. In reviewing the equities of the case in light of the default which was entered, we also note that although removing *Miller II* to federal court was ultimately not successful, it was a defensive response to Miller's complaint and the removal petition was filed prior to the running of the extension period granted to the Bank to file a responsive pleading.

Because the *unique* facts of the present case indicate that appellees were aware of the Bank's efforts to respond to the complaint and defend the claims made by Miller, but nevertheless entered a default judgment immediately upon the termination of the extension period, and because this claim could have been raised in *Miller I* but was not, and

because *Miller I* was left to languish in the federal court until the Bank sought to remove the present case to federal court in order to consolidate it with *Miller I,* and only then did appellees seek to dismiss *Miller I,* the trial court's decision not to open the judgment is inconsistent with the equities in the present case. We will reverse the order denying the Bank's petition to open the judgment and let the parties proceed to a final resolution of the case on the merits.

## IV. BANK'S REMAINING ARGUMENTS

Having concluded that the equities warrant the opening of the judgment in the present case, it is not necessary for us to discuss the Bank's remaining arguments in support of its request that the judgment be opened or stricken. However, we note in passing that the remaining claims concerning the violation of the Bankruptcy Court order, the sufficiency of the complaint to state a cause of action, and the adequacy of the service of the complaint have all been adequately discussed and correctly decided by the trial court.

Order reversed. Default judgment opened and case remanded for further proceedings. Jurisdiction is relinquished.