570 A.2d 71

**Helen JOHNSON, Administratrix of the Estate of Harvey Cornelius Johnson, Sr., Deceased, Appellant,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 14, 1989.

Decided Feb. 8, 1990.

William J. Wheeler, Montgomery Co., for appellant.

Philip Berens, Ardmore, Phila Co., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The estate of Cornelius Johnson sued to recover survival and wrongful death damages resulting from Mr. Johnson's death when he was struck by a SEPTA train. SEPTA was served with the complaint on August 11, 1986. On August 20, 1986, SEPTA's counsel wrote to Johnson's attorney as follows:

Dear Counselor:

We have been served with a complaint in the above case. The complaint will be processed and assigned to one of our staff attorneys for handling.

We request a reasonable extension of time in order to file an answer to your complaint. Unless we hear from you to the contrary, we will assume that such courtesy has been granted. An entry of appearance is attached.

> Yours truly,
> Philip E. Berens
> Staff Attorney for SEPTA

On August 25, 1986, SEPTA's counsel telephoned Johnson's counsel to confirm his request for an extension and to secure opposing counsel's agreement. As a result of this telephone conversation, Johnson's counsel on September 5, 1986, wrote the following letter to SEPTA's counsel:

> Dear Mr. Berens:
>
> This letter confirms our conversation of August 25, 1986 in which I granted you a thirty (30) day extension to plead in this case.
>
> > Very truly yours,
> > William J. Wheeler

On September 25, 1986, thirty days after the telephone call, SEPTA still had not filed an answer and Johnson filed a default judgment.[1]

On August 26, 1987, the trial court granted SEPTA's petition to open judgment. Johnson filed a timely appeal and Superior Court affirmed. 380 Pa.Super. 656, 547 A.2d 444. We granted allocatur to examine the lower courts' application of Pa.R.C.P. 237.1.

Pa.R.C.P. 237.1 was promulgated to achieve procedural certainty in response to the large number of petitions to open default judgment and the ensuing appeals. The rule provides:

NOTICE OF PRAECIPE FOR ENTRY OF DEFAULT JUDGMENT

(a) No judgment by default shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written notice of intention to file the

---

1. In fact, SEPTA took no action on the complaint until October 27, 1986, when it responded to the default judgment by filing an appeal to Superior Court. On January 9, 1987 Superior Court dismissed the appeal as improperly filed because the order appealed from was a nonappealable interlocutory order. Instead of appealing, of course, SEPTA should have filed a petition to open or strike judgment in the Court of Common Pleas. On May 13, 1987, almost eight months after the default, SEPTA filed a petition to open default judgment.

praecipe was mailed or delivered to the party against whom judgment is to be entered and to his attorney of record, if any, after the default occurred and at least ten days prior to the date of the filing of the praecipe. *If a written agreement for an extension of time specifies a time within which the required action must be taken and a default occurs thereafter, judgment by default may be entered by the prothonotary without prior notice under this rule.* A copy of the notice or agreement shall be attached to the praecipe.

(b) * * *

(c) The notice required by subdivision (a) shall be substantially in the following form:

(CAPTION)

TO _____
 (Defendant)

DATE OF NOTICE _____

IMPORTANT NOTICE

YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO TAKE ACTION REQUIRED OF YOU IN THIS CASE. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS. YOU SHOULD TAKE THIS NOTICE TO A LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE FOLLOWING OFFICE TO FIND OUT WHERE YOU CAN GET LEGAL HELP ...

Pa.R.C.P. 237.1. (Emphasis added).

The comments to Rule 237.1 provide, in relevant part, as follows:

If a written extension between the parties is couched in general language, without specifying a fixed date for

compliance, then a ten-day notice under the Rule will be required before judgment can be entered.

* * * * * *

A written agreement of extension need not be formal. An exchange of letters between counsel will suffice. But any agreement should be sufficiently specific to avoid argument over its terms. Many decisions deal with ambiguous extension agreements or alleged oral modifications of written agreements.

It is undisputed that Johnson did not provide notice of intent to take a default judgment.

The trial court held that the agreement in this case was not sufficiently specific to avoid argument over its terms; that it did not specify a fixed date for compliance, and absent such a date, the moving party was required to give an additional ten-day notice; and that there must be some evidence, absent in this case, that there was a meeting of minds to the effect that a default would be taken unless a response was made by the date agreed upon. Slip Op. at 6. Superior Court concurred with the trial court's rationale and noted that there was no indication that a default would be entered in the event that SEPTA failed to plead within thirty days. Slip Op. at 6.

■ Certainly, lawyers, more than others, should be well aware of the requirements of "a written agreement for an extension of time," as provided for in Rule 237.1. The requirements, basically, are the same as for any writing which purports to be a contract: the parties must be known; the terms (here the time period involved) must be definite; and the writing must, when plainly construed, indicate an agreement or meeting of the minds on the terms.[2,3] In

---

**2.** Because agreements of the sort at issue in this case are made pursuant to Rule 237.1, the rule operates to satisfy the usual consideration requirement. *Accord, Burkett v. Allstate Insurance Co.,* 368 Pa.Super. 600, 608, 534 A.2d 819, 824 (1987):

In the written agreement contemplated under Pa.R.C.P. 237.1 there is no legally sufficient consideration required in the usual sense of contract law. An agreement is enforceable where the parties intended to conclude a binding agreement and the essential terms of

addition, an agreement written in the context of statutory or regulatory application must be read in the context of the statute or rule. Finally, although the agreement need not be formal, as the comment indicates, it does require at least "an exchange of letters."

██ The first question which arises in this case is whether there has been an exchange of letters within the meaning of the rule. Presumably, the requirement of an exchange of letters was intended as a sort of procedural statute of frauds, a requirement that the exchange in and of itself must reveal the agreement. If that were not the case, the rule would do little to serve its intended purpose of reducing uncertainty, for the parties might well disagree, as in this case, as to the terms of the agreement. It seems likely, therefore, that the comment contemplated the situation in which one party's letter requested an extension of X days and the other party's letter granted the X day extension. In this case, however, one party requested an open-ended extension and the other party replied by granting a thirty day extension. We do not believe, therefore, that there is an "exchange of letters" manifesting an agreement, for the writing indicates only a proposal offered by one of the parties answered by a counter-proposal.

██ Additionally, even if there had been an exchange of letters in which both letters identified thirty days as an appropriate time period for the extension, there is a question as to whether the thirty day time period is sufficiently identified as to constitute an agreement. Left to our own devices, we would understand "thirty day extension" to mean an extension to run thirty days from the date the answer was originally due, August 31, 1986. Johnson's attorney, however, intended the thirty days to run from

> the agreement are certain enough to provide the basis for an appropriate remedy.
> (Citations omitted).

**3.** Although we do not rigidly apply the traditional common law of contracts in agreements of this sort, we must apply basic principles of contract law as they relate to the formation of agreements.

August 25, 1986. He stated the following in his answer to SEPTA's petition to open and strike default judgment:

> Mr. Berens' [SEPTA's attorney] statement to William Wheeler [Johnson's attorney] was that he needed a 30 day extension from the date of August 25, 1986 for him to file an Answer in the herein action. Mr. Wheeler then stated to Mr. Berens that he would grant Mr. Berens a thirty day extension and memorialize the agreement by submitting a letter to Mr. Berens.

Plaintiff's Answer to SEPTA's Petition to Open and Strike Default Judgment, Paragraph 9. Thus, the ambiguity is not only apparent from the face of the document, but it is actual in that our construction of the most probable meaning of the phrase "thirty day extension" is not what was meant at all. In sum, there is no agreement because the "thirty day extension" granted by plaintiff's attorney is indefinite as to its application: the scrivener of the agreement states that it means something other than its plain meaning, and the opposing party insists that it means yet something else. Even in the absence of these disagreements based on the parties' understandings of what was said during the telephone conversation of August 25, 1986, the "thirty day extension" of Johnson's letter would be unacceptably ambiguous: it might refer to thirty days from the date the answer was due, or thirty days from the telephone conversation, or even thirty days from the date of the letter. In the face of such uncertainty it cannot be said that an agreement exists.

 We concur, therefore, with the lower courts that there is no legally enforceable agreement in this case. We do not agree, however, with the lower courts' observation that the agreement failed because "the letter contained no indication that a default judgment would be entered should SEPTA fail to plead within thirty days." Superior Court Slip Op. at 6, *accord*, Court of Common Pleas of Philadelphia County Slip Op. at 6. Rule 237.1 plainly says that if the agreement specifies a time within which action must be taken, and such action is not taken, a default judgment may

then be entered. No separate warning of default or evidence of agreement that a default judgment will be taken is required. By operation of the rule, once an extension is agreed upon in writing by terms that are definite, and the party requesting the extension does not act within the time agreed upon, a default may be taken without further discussion or warning.

■ Thus, absent an *"exchange of letters"* manifesting a meeting of the minds, and absent an *unambiguous statement of a definite time period for the extension*, a separate ten day notice in a form substantially the same as that set out in Rule 237.1 would be required before a default judgment was permitted under the rule. No such notice was given, and the default judgment, therefore, was improperly entered.[4]

Affirmed.[5]

**4.** The result which we are constrained to reach today should not be construed to condone the obvious laxity and blundering, assertedly unintentional, with which SEPTA pursued its responsibilities in this case. During oral agrument on SEPTA's petition to open judgment, the trial court indicated that it had eight to ten other cases involving Mr. Berens in which parties were attempting to take default judgments against SEPTA for failing to answer discovery. The court stated:

> Mr. Berens, I think it should be placed on the record that there must be at least eight to ten times that you failed to answer discovery, and I had to call SEPTA to tell them I was going to enter a default judgment unless you would do it, and it still became a problem on many of those occasions. I have never had any attorney that I have experienced such confusion, disorganization and failure to meet deadlines as I have had the experience with you since I've been a judge, which is now ten years.

Oral argument on SEPTA's Petition to Open Judgment, N.T. June 6, 1987, pp. 13–14. That a state agency, acting through its legal representative, would discharge its responsibilities in such a haphazard way—for whatever reason—is shameful. Not only does SEPTA's conduct of this case reflect poorly upon the agency, but also it has engendered much needless litigation at great cost to government and the parties.

**5.** Johnson has raised five other issues which we decline to address. Two issues, concerning the chain of custody of samples of blood and the legal effect of unsigned statements, were not preserved for appellate review. The third and fourth issues, concerning the trial court's alleged abuse of discretion in opening the default judgment have to do

218

ZAPPALA, J., concurs in the result.

LARSEN, J., dissents.

with the trial court's assessment of the equities of the case, and on this record do not call for our review. The fifth issue, concerning the legal effect of SEPTA's failure to take depositions pursuant to Pa.R. C.P. 209, presents no occasion for review where the reason for not taking the depositions was that the trial court indicated it did not require them.