631 A.2d 621

**REILLY ASSOCIATES**

v.

**DURYEA BOROUGH SEWER AUTHORITY, Appellant.**

Superior Court of Pennsylvania.

Submitted May 24, 1993.

Filed Aug. 12, 1993.

Reargument Denied Oct. 15, 1993.

Barry J. Chromey, Old Forge, for appellant.

Eileen A. Reilly, West Pittston, for appellee.

Before ROWLEY, President Judge, and CIRILLO and BROSKY, JJ.

ROWLEY, President Judge:

This appeal arises out of an action brought by plaintiff/appellee Reilly Associates ("Reilly") against defendant/appellant Duryea Borough Sewer Authority ("the Authority") to recover for the latter's alleged nonpayment for services rendered. The Authority's failure to file an answer to Reilly's complaint resulted in the entry of a default judgment against the Authority. In an order entered November 19, 1992, the trial court denied the Authority's petition to strike the default judgment. The sole issue raised by the Authority in this timely appeal of that order is whether the trial court erred in doing so. Having carefully considered the arguments of the parties in light of the relevant case law and the evidence of record, we affirm the order of November 19, 1992.

The requirements for obtaining a default judgment are set forth in Pa.R.C.P. 237.1(a):

> No judgment by default shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written notice of intention to file the praecipe was mailed or delivered to the party against whom judgment is to be entered and to his attorney of record, if any, after the default occurred and at least ten days prior to the date of the filing of the praecipe. **If a written agreement for an extension of time specifies a time within which the required action must be taken and a default occurs thereafter, judgment by default may be entered by the prothonotary without prior notice under this rule.** A copy of the notice or agreement shall be attached to the praecipe.

Pa.R.C.P. 237.1(a) (emphasis added). The Authority asserts that Reilly failed in several respects to comply with the notice provisions set forth in the first sentence of this paragraph. Reilly maintains, however, that because a letter from the Authority's solicitor constituted a written agreement for an extension of time, compliance with the notice provisions was unnecessary.

We will not disturb the trial court's ruling in this matter absent a manifest abuse of discretion or an error of law. *Marzullo v. Stop–N–Go Food Stores of Pittsburgh, Inc.,* 364 Pa.Super. 106, 110, 527 A.2d 550, 551, *alloc. denied,* 517 Pa. 599, 535 A.2d 1058 (1987). The trial court indicated its agreement with Reilly's position by citing *Johnson v. Southeastern Pennsylvania Transportation Authority,* 524 Pa. 209, 570 A.2d 71 (1990), and *Miller Block Company v. United States National Bank in Johnstown,* 389 Pa.Super. 461, 567 A.2d 695 (1989), *alloc. denied,* 525 Pa. 658, 582 A.2d 324 (1990), discussed below, as the basis for denying the Authority's petition to strike the judgment.

In *Miller Block v. U.S. National Bank,* the appellant Bank argued that even if there existed a written agreement for extension of time, it was still essential for the party seeking a default judgment to comply with the notice provisions of Rule 237.1(a). This Court held, however, that "[t]he express purpose of the written extension exception to the Rule 237.1

notice is to obviate the need for the written notice of intent to take a default judgment." *Id.* at 468, 567 A.2d at 699. In light of that holding, we consider whether a written extension agreement exists in the present case.

Reilly contends that the following letter of February 6, 1991, from the Authority's counsel to Reilly's counsel is such an agreement:

I am in receipt of a copy of the complaint filed in the above-captioned matter on behalf of the Plaintiff.

The purpose of this letter is to request an extension of thirty (30) days for the filing of an Answer on behalf of the Defendant, until March 8, 1991. If you have an objection to this arrangement, please advise me immediately. I will infer from silence that you consent to this arrangement.

Reilly did not respond to the Authority's letter. The Authority did not file an answer on or before March 8, 1991. On March 20, 1991, still lacking an answer, counsel for Reilly praeciped for entry of a default judgment.

The Explanatory Note to Rule 237.1 advises that "[a] written agreement of extension need not be formal. An exchange of letters between counsel will suffice. But any agreement should be sufficiently specific to avoid argument over its terms." In *Johnson v. SEPTA, supra,* our Supreme Court specified the necessary elements of a written extension agreement:

The requirements, basically, are the same as for any writing which purports to be a contract: the parties must be known; the terms (here the time period involved) must be definite; and the writing must, when plainly construed, indicate an agreement or meeting of the minds on the terms. In addition, an agreement written in the context of statutory or regulatory application must be read in the context of the statute or rule. Finally, although the agreement need not be formal, as the comment indicates, it does require at least "an exchange of letters."

*Id.,* 524 Pa. at 214–15, 570 A.2d at 73–74 (footnotes omitted).

In the letter of February 6, 1991, the parties are known and the crucial term (i.e., the time period) is definite. Whether

there was a meeting of the minds depends, we think, on the significance of the "missing" letter: the Authority's intent is plain from its letter, but there is no response from Reilly. The requirement of "an exchange of letters" is noted by the Supreme Court not only in the passage quoted above, but also in the following discussion:

> [A]bsent an *"exchange of letters"* manifesting a meeting of the minds, and absent an *unambiguous statement of a definite time period for the extension,* a separate ten day notice in a form substantially the same as that set out in Rule 237.1 would be required before a default judgment was permitted under the rule.

*Id.* at 217, 570 A.2d at 74–75 (emphasis in original). The issue before the Court, however, was not whether a single letter can ever indicate a written agreement for an extension, but whether the two letters involved in the case—one party requesting an open-ended extension, the other replying by granting a thirty-day extension—manifested such an agreement. The Court concluded that they did not.

The issue to be decided here, in contrast, is whether a single letter from defendant's counsel to plaintiff's counsel, requesting a specific extension of time within which to file an answer and expressly stating that silence would be construed as consent to the proposal, constitutes a written agreement for extension. We conclude that this issue has yet to be decided, as it was not the issue before the Court in *Johnson v. SEPTA* and we have found no case directly on point.

We learn from *Johnson v. SEPTA* that in determining whether a writing constitutes a written agreement for extension of time, "we must apply basic principles of contract law as they relate to the formation of agreements." *Id.* at 215 n. 3, 570 A.2d at 73 n. 3. It is settled law that a written agreement is construed against its drafter. *Central Transportation, Inc. v. Board of Assessment Appeals of Cambria County,* 490 Pa. 486, 496, 417 A.2d 144, 149 (1980). Thus, where defense counsel requested a thirty-day extension of time within which to answer a complaint, but later sought to

explain his failure to file an answer by saying, inter alia, that he had mistakenly thought the extension granted by plaintiff's counsel was open-ended because it was his usual practice to request that type of extension, this Court held that his "misapprehension as to the length of the extension cannot be considered reasonable where he himself sought the extension and specified its length." *Horan v. R.S. Cook & Associates, Inc.,* 287 Pa.Super. 265, 268, 430 A.2d 278, 279 (1981).

In the present case, counsel for the Authority specifically disclaimed any need for a response from Reilly's counsel if the latter had no objection to the requested extension. Therefore, counsel for the Authority will not now be heard to complain that "there was no exchange of letters. . . . There was no written confirmation. There was no oral communication acknowledging the proposed extension" (Brief for Appellant at 4). What counsel for the Authority did receive from counsel for Reilly was, as invited, inaction: under Pa.R.C.P. 1026(a), the Authority's answer to Reilly's complaint should have been filed on February 4, 1991,[1] yet Reilly took no step toward obtaining a default judgment until March 20, 1991, almost two weeks after the Authority's self-imposed deadline of March 8, 1991. If counsel for the Authority had wished to obtain the certainty inherent in a more explicit response, he had only to request such a response or eliminate the last sentence from his letter. Counsel for the Authority cannot establish the rules of the game and then complain because counsel for Reilly agreed to play by those rules.

We note also that, following *Johnson v. SEPTA,* the writing in question must be read in the context of the applicable rule. The letter of February 6, 1991, requested an extension until March 8, 1991. The consequence of failing to file an answer by that date is ascertainable from the language of Rule 237.1(a): a default judgment may be taken. Although the Authority argues to the contrary,

1. Pa.R.C.P. 1026(a) states in pertinent part that "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading. . . ." Reilly's complaint was served on January 15, 1991.

[by] operation of the rule, once an extension is agreed upon in writing by terms that are definite, and the party requesting the extension does not act within the time agreed upon, *a default may be taken without further discussion or warning.*

*Id.,* 524 Pa. at 217, 570 A.2d at 74 (emphasis added).

Finally, while we do not dispute the Authority's assertion that "snap judgments" entered without notice are disfavored, we do not perceive any such action to have been taken in this case. As noted earlier, Reilly waited twelve (12) days beyond the deadline chosen by the Authority before seeking a default judgment. This is not a case in which the Authority was taken by surprise; rather, it is a case in which the Authority had ample time, even more than it had requested, within which to file an answer and avoid the entry of a default judgment.

For the reasons set forth above, we perceive neither a manifest abuse of discretion nor an error of law in the trial court's order of November 19, 1992, denying the Authority's petition to strike the default judgment entered against it. Accordingly, we affirm the court's order.

Order affirmed.