J-A10034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MONICA CLARK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LESLIE MCDERMOTT AND EDSON CRAFTS, EXECUTORS OF THE ESTATE OF DANIEL M. CLARK, AND CMS COMPUTER SERVICES, INC. | |
| Appellees | No. 240 MDA 2014 |

Appeal from the Order January 7, 2014
In the Court of Common Pleas of Huntingdon County
Civil Division at No(s): 10-1017

BEFORE: GANTMAN, P.J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 01, 2015**

Monica Clark ("Wife") appeals from an order granting summary judgment to Leslie McDermott and Edson Crafts, personal representatives of the estate of Daniel Clark, deceased, and CMS Computer Services, Inc. ("CMS"), a corporation that Daniel Clark owned. We affirm.

The record reflects the following: Wife is the widow and sole heir of Robert Clark ("Husband"), who died on November 6, 2003. On December 19, 2003, Wife and her son, Daniel Clark ("Son"), were appointed as co-executors of Husband's estate. Husband's life was insured under three policies: (1) a $1,000,000 Hartford Life Insurance Company policy naming Son as the owner and beneficiary; (2) a $250,000 Principal Life Insurance

1

Company policy which named Wife as the beneficiary; and (3) a $250,000 Hartford Life Insurance Company policy that named Wife as the beneficiary. Wife received the proceeds of the $250,000 Principal Life policy and the $250,000 Hartford Life policy.

Furthermore, at the time of his death, Husband owned real estate and personal property connected to his business which Wife inherited. On February 10, 2005, Wife conveyed her title and interest in this real estate and personalty to Son in consideration for $80,000. The HUD-1 settlement statement executed at closing states that the contract price of $80,000 was for "real estate and personalty."

On July 14, 2008, Son died. On August 4, 2008, letters testamentary were granted to McDermott and Crafts as personal representatives of Son's estate.

On July 13, 2010, Wife filed a civil action against McDermott, Crafts, and CMS. Count I of Wife's complaint alleged conversion of the $1,000,000 Hartford policy (even though her son was the sole named beneficiary of the policy) and of "tangible personal and business property of [Husband]."[1] Count II alleged that Son defrauded Wife by lying that he would "invest her share" of the $1,000,000.00 Hartford policy on her behalf and "hold estate

---

[1] Wife's Complaint, ¶ 20.

assets on [her] behalf" but then transferring these assets into his sole name.[2]

Appellees filed an answer and new matter to the complaint and subsequently moved for summary judgment. In their summary judgment motion, Appellees asserted that the $1,000,000 Hartford policy unequivocally lists Son as the sole beneficiary. In her response, Wife admitted, in so many words, that Son is the sole beneficiary of this policy,[3] but she then insisted (contradictorily) that Son promised to invest her alleged share of these proceeds on her behalf and then broke his promise.[4]

With regard to the issue of personalty, Wife contended that Son misappropriated items that Father kept at his real estate business, including office furniture, computers, an oriental rug, a fax machine, filing cabinets, air conditioners, a washer and dryer, kitchen appliances and business

---

[2] *Id*., ¶¶ 25, 28.

[3] Executors' Motion For Summary Judgment, ¶ 8 (averring that "[Son] at all times was the sole beneficiary of the $1 million Hartford Life Insurance policy"); Wife's Answer To Motion For Summary Judgment, ¶ 8 (responding that the policy "speaks for itself" but admitting that Son's name "appears in block 3B as the 'beneficiary' ").

[4] Wife's Answer To Motion For Summary Judgment, exhibit 1 (paragraphs 10-11 of Wife's Affidavit; "[Son] advised me that he was investing the money for me in order to provide for my needs for the remainder of my life … Because of [Son's] experience in financial matters … as a public accountant with [Husband], and because of my lack of involvement or experience in such matters, I relied on [Son] to take care of the monies left for me by [Husband], including the life insurance proceeds").

records.[5]   Appellees argued in their summary judgment motion that Wife conveyed this personalty to Son on February 10, 2005, the date she deeded Son the real estate on which Father's business was located.[6]   The HUD-1 form that Wife signed at settlement on that date stated that she sold "real estate & personalty" to Son for $80,000.[7]

Wife responded that this notation on the HUD-1 form was an "afterthought" inserted "at the request of [Son]," citing testimony from an attorney who provided advice both to Wife and Son during the closing.[8] Based on the attorney's testimony, Wife claims that she only intended to sell real estate, that there was no meeting of the minds as to the meaning of "personalty",[9] and no consideration paid for this "personalty".[10]

In a memorandum and order docketed on January 7, 2014, the trial court granted summary judgment to Appellees and dismissed Wife's action

---

[5] Executors' Response To Wife's List Of Claims, exhibit A.

[6] Executors' Motion For Summary Judgment, ¶ 44.

[7] *Id*., exhibit 1 (HUD-1 statement).

[8] Wife's Brief In Opposition To Motion For Summary Judgment, pp. 7-9 (citing attorney Harvey Reeder's deposition testimony, pp. 42-53, 75-78 (attached as exhibit 2 to Answer To Motion For Summary Judgment)).

[9] *Id*., p. 8.

[10] Wife's Answer To Motion For Summary Judgment, exhibit 1 (Wife's Affidavit), ¶ 19 ("I never executed a bill of sale for any personal property, nor did I agree to convey personal property to [Son] as part of the $80,000.00 …").

with prejudice. Wife filed a timely appeal and a timely Pa.R.A.P. 1925(b) statement. The trial court subsequently filed a Pa.R.A.P. 1925(a) opinion.

Wife raises three issues on appeal:

Did the trial court commit an error of law or abuse its discretion when it granted summary judgment for [Appellees] where genuine issues of material fact exist relative to whether all of the business assets, both tangible and intangible, of [Husband] were conveyed by [Wife] to [Son] by her 2005 deed?

Did the trial court commit an error of law or abuse its discretion when it granted summary judgment for [Appellees] where genuine issues of material fact exist relative to the nature of the representations made by [Son] to [Wife], the falsity of the statements, and the reasonableness of [Wife's] reliance on those statements under the circumstances?

Did the trial court commit an error of law or abuse its discretion when it granted summary judgment for [Appellees] where genuine issues of material fact exist relative to the time at which [Wife] knew or should have known of the misrepresentations of [Son] and hence the time when the statute of limitations began to run?

Brief For Appellant, p. 4.

When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

[O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that

- 5 -

the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Mull v. Ickes*, 994 A.2d 1137, 1139–40 (Pa.Super.2010).

For the sake of convenience, we organize our analysis in a different sequence than the arguments in Wife's brief. We first conclude that the trial court properly granted summary judgment to Appellees with regard to the insurance proceeds in the $1,000,000 Hartford policy. We then conclude that the trial court properly granted summary judgment to Appellees with regard to the personalty claimed by Wife.

**Insurance proceeds.** Conversion is the "deprivation of another's right of property in, or use or possession of, a chattel … without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank*, 751 A.2d 655, 659 n.3 (Pa.Super.2000).

To establish fraud, the plaintiff must show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with

- 6 -

knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Hart v. Arnold*, 884 A.2d 316, 339 n.7 (Pa.Super.2005).

Wife argues in her appellate brief that Son defrauded her out of the proceeds of the $1,000,000 Hartford policy,[11] but she does not argue that Son converted her insurance proceeds. Therefore, she has waived her claim of conversion with regard to the insurance proceeds. *Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa.2009) (issues not developed in appellant's brief are waived for review on appeal).

With regard to fraud, the trial court correctly determined that Wife had no interest in the $1,000,000 Hartford policy, because Son was the sole beneficiary. Moreover, Wife was fully aware that Son was the sole beneficiary of this policy, because she signed four personal financial statements that identified Son as the beneficiary. Since she knew that she was not entitled to any proceeds from this policy, she had no right to rely on Son's alleged promise to invest some of the proceeds for her benefit.[12]

---

[11] Brief, pp. 13-15.

[12] Further, as noted on pages 1-2 *supra*, Wife was the beneficiary of two other $250,000 insurance policies.

**Personalty.** Wife waived her fraud claim with regard to personalty. Although she alludes to fraud in boilerplate fashion in her answer to Appellees' motion for summary judgment,[13] she fails to develop her fraud argument further. Her memorandum in opposition to summary judgment discusses contract law concepts instead of fraud.

A brief review of the evidence will place Wife's waiver in context. Wife's February 10, 2005 conveyance to Son included both realty and personalty that she inherited from Husband. The HUD-1 statement signed by both Wife and Son (1) identifies the location of Husband's realty as "Borough of Huntingdon, Huntingdon County, Pennsylvania, Tax Map No. 18-01-31"; (2) specifies the items of sale as "real estate & personalty"; and (3) provides that Wife agreed to sell the "real estate & personalty" to Son for a lump sum of $80,000. The certification on the second page of the HUD-1 statement provides: "I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and correct statement of all receipts and disbursements on my account or by me in this transaction …" Wife's signature appears directly beneath this certification. The meaning of this document is plain: Wife agreed to sell all real estate and all personalty for one lump sum of $80,000. Wife

_____

[13] Wife's Answer to Motion For Summary Judgment, ¶ 47 ("[Wife] was assured at all times by [Son] that he was maintaining these [personal] assets for her benefit").

understood or should have understood the meaning of the document, particularly in view of her certification that she carefully reviewed its contents and found them true and correct.

Conspicuously absent from Wife's memorandum in response to Appellees' motion for summary judgment is any argument that Son defrauded her into signing the HUD-1 form. Instead, Wife argued that there was no meeting of the minds with regard to the meaning of "personalty", and that she received $80,000.00 only as consideration for real estate but not personalty -- contract law concepts that do not suggest that Son misled Wife with a false misrepresentation, the essence of fraud. **Hart**, **supra**. By failing to argue fraud at the summary judgment stage, Wife waived her right to argue fraud in this appeal. **See Walsh v. Borczon**, 881 A.2d 1, 5-6 (Pa.Super.2005) (patient waived, for purposes of appeal, her challenge to physician's claim to qualified immunity under the Mental Health Procedures Act (MHPA) by failing to raise that argument in opposition to physician's motion for summary judgment; the only argument patient presented in opposition to physician's summary judgment motion was that she had pled sufficient facts to present jury question as to whether physician's acts constituted gross negligence, and in her statement of matters complained of on appeal, patient, for the first time, directly raised argument that physician's acts related to voluntary outpatient treatment and therefore were not covered by immunity provisions of MHPA).

Wife did raise a conversion argument at the summary judgment stage below, and she raises it again in this Court, but it is devoid of merit. According to Wife, (1) there was no meeting of the minds concerning the meaning of "personalty" in the HUD-1 statement, and (2) she received no consideration for personalty; thus, (3) by obtaining the personalty without consideration, Son converted the personalty. The flaw in this argument is that the HUD-1 statement was clear on its face, and Wife acknowledged via signature that she read the entire statement and understood that it was true and correct. Thus, there was a meeting of the minds, reduced to an integrated written instrument, for Wife to receive $80,000 from the sale of both realty and personalty. *Johnson v. Southeastern Pennsylvania Transportation Authority*, 570 A.2d 71, 73 (Pa.1990) (basic elements of valid written contract are: "the parties must be known; the terms … must be definite; and the writing must, when plainly construed, indicate an agreement or meeting of the minds on the terms"). Thus, as a matter of law, Son did not convert the personalty; he received it as part of a valid agreement.

**Conclusion.** For these reasons, the trial court properly entered summary judgment in favor of Appellees on Wife's fraud and conversion actions.[14]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2015

_____

[14] In view of the foregoing analysis, it is unnecessary for us to review the trial court's alternative grounds for granting summary judgment, particularly the statute of limitations issue in pages 9-11 of its January 7, 2014 memorandum and order.