Nancy J. SIGNORA, Individually and on Behalf of A Class, Appellees

v.

LIBERTY TRAVEL, INC. and Barry S. Kaplan, Appellants

Nancy J. SIGNORA, Individually and on Behalf of A Class, Appellants

v.

LIBERTY TRAVEL, INC. and Barry S. Kaplan, Appellees

Superior Court of Pennsylvania.

Argued Dec. 7, 2004.

Filed Oct. 28, 2005.

Judith E. Harris, Philadelphia, for Liberty and Kaplan.

Mark A. Sereni, Media, for Signora.

Before: BOWES and McCAFFERY, JJ., and McEWEN, P.J.E.

OPINION BY McCAFFERY, J.:

¶ 1 We are asked in this appeal and cross-appeal to review a judgment entered upon a molded jury verdict which included an award of attorneys' fees. Appellant, Nancy J. Signora,[1] a former employee of

1. Pursuant to Pa.R.A.P. 2136(a), we shall re-      fer to Nancy J. Signora, plaintiff below and

Liberty Travel, Inc.,[2] worked as a travel consultant at Liberty's Springfield Mall location from late May 1993, through early February 1995. During her tenure, Signora complained to management about the amount of overtime pay she received, and Liberty subsequently terminated her employment on February 7, 1995. Shortly thereafter, Signora commenced the instant lawsuit, and the parties have been litigating literally ever since. Upon our thorough review of the record, the briefs and arguments of the parties, the trial court's comprehensive 44–page opinion, and the pertinent law, we affirm the judgment of the trial court in all respects.

¶ 2 This is at least the fourth occasion that this Court has been asked to review the propriety of actions taken by the Delaware County Court of Common Pleas in the course of this now decade-long litigation.[3] We set forth here, once more, the relevant background of the matter as follows:

> The procedural history of this matter is lengthy and complicated. It can be summarized in its most basic sense as follows. In 1995, Nancy Signora individually and on behalf of members of a class (Plaintiffs) filed an action against Liberty Travel, Inc. and Barry S. Kaplan (Defendants). The complaint made claims for wrongful discharge and for violations of the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law. A default judgment was later obtained based upon Defendants' failure to respond. Defendants filed a Petition to Open the Default Judgment, which was denied. A subsequent Motion for Reconsideration alleged that Plaintiffs' counsel had agreed in writing to an extension of time for the filing of Defendants' Answer and that despite this agreement a default judgment was entered. After an evidentiary hearing was held on the matter, the trial court denied Defendants' motion. This court affirmed the court's order on appeal. *Signora v. Liberty Travel, Inc.*, 718 A.2d 355 (Pa.Super.1998). Sometime later Defendants filed a Petition for Relief from Default Judgment. It was denied and Defendants' appeal of the matter was quashed with the court referring to the doctrine of *res judicata* and ruling that: "**Appellants cannot now seek again to open the default judgment which was final in 1998.**" *Signora v. Liberty*, 298 EDA 2000, memorandum opinion at 4, 769 A.2d 1218 (Pa.Super. filed December 4, 2000). The Supreme Court of Pennsylvania later denied a petition of allowance of appeal.

*Signora v. Liberty Travel, Inc.*, 846 A.2d 145, 146 (Pa.Super.2004) (footnote omitted) (emphasis supplied). Upon the denial of the petition for allowance of appeal by the Supreme Court on July 11, 2001, the case proceeded in the trial court on the issue of class certification. The trial court certified the class on June 19, 2002. A jury trial was held from July 21 through July 24, 2003, on the issue of damages due 1) to the class for violations of the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law; and 2) to Signora individually on her wrongful termination claim. The jury returned a verdict in favor of the class, including Sig-

Appellant at Docket No. 538 EDA 2004, as "Appellant" or "Signora."

Docket No. 489 EDA 2004, as "Cross–Appellants" or "Liberty."

2. Pursuant to Pa.R.A.P. 2136(a), we shall refer to Liberty Travel, Inc. and Barry S. Kaplan, defendants below and Appellants at

3. The Honorable Charles B. Burr, II, presided over the stage of proceedings now under review.

nora, for overtime pay in the amount of $269,834.94, and for interest thereon in the amount of $143,736.15 for a total of $413,571.09. The jury also returned a verdict in favor of Signora on her wrongful termination claim for compensatory damages for emotional distress, aggravation, and inconvenience in the amount of $100,000.00, and for embarrassment and humiliation in the amount of $27,479.49. The jury also awarded her punitive damages in the amount of $1000.00. Subsequently, following an evidentiary hearing and submission of documentary evidence by the parties, the trial court awarded class counsel attorneys' fees in the amount of $864,067.00. Following the filing and denial of post-trial motions, each of the parties filed notices of appeal and statements of matters complained of on appeal.[4] On appeal at Docket No. 489 EDA 2004, Liberty presents the following five issues for our review:

1. WHETHER PENNSYLVANIA WOULD DETERMINE THE "REGULAR RATE" FOR PURPOSES OF CALCULATING "TIME AND A HALF" OVERTIME IN ACCORDANCE WITH FEDERAL LAW?

2. WHETHER THE TWO ORDERS OF DEFAULT ENTERED BELOW FOR FAILURE TO FILE RESPONSIVE PLEADINGS RESOLVED ISSUES OF LAW?

3. WHETHER THE 1998 DEFAULT IN FAVOR OF THE CLASS WAS PROPERLY ENTERED BASED SOLELY ON THE PRIOR DEFAULT, AND WHETHER THE LOWER COURT THEREFORE PROPERLY REFUSED TO GRANT RELIEF FROM THAT DEFAULT?

4. WHETHER PENNSYLVANIA WOULD RECOGNIZE A CAUSE OF ACTION FOR WRONGFUL TERMINATION IN THE CIRCUMSTANCES PRESENTED HERE?

5. WHETHER ON THE RECORD BELOW APPELLANT WAS ENTITLED TO ATTORNEYS' FEES, INCLUDING A CONTINGENCY MULTIPLIER, OF OVER $864,000.00?

(Cross–Appellants' Brief at 4).

■ ¶ 3 We are in agreement with the trial court's combined treatment of the first four issues raised by Liberty, as they all pertain to the validity and effect of the default judgments which had been entered against Cross–Appellants. (See Trial Court Opinion at 6–9, 16.) Cross–Appellants are incorrect in their assessment of the preclusive effect of the prior rulings of this Court regarding their defenses on the merits to the individual and class-wide allegations against them. We conclude that proper application of issue preclusion principles pertinent to successive appeals in

---

4. As observed by the trial court, these statements were "lengthy, repetitive, and far from concise." (Trial Court Opinion, dated August 4, 2004, at 5.) Liberty's statement was 8 pages long, containing 25 paragraphs. Signora's statement was also 8 pages long and contained 46 separate paragraphs. We caution the parties, and more specifically their counsel, to heed this Court's recent admonitions against overly verbose Pa.R.A.P.1925(b) statements which do not concisely identify the issues they actually intend to raise on appeal. See Kanter v. Epstein, 866 A.2d 394 (Pa.Super.2004) (quashing appeal where volumi-

nous Rule 1925(b) statements attempted to overwhelm trial court); see also Jones v. Jones, 878 A.2d 86 (Pa.Super.2005) (affirming and remanding for imposition of counsel fees where appellant submitted extravagant Rule 1925(b) statement to trial court). Here, the trial court performed a masterful job in distilling the arguments of each party to their essence, and for this reason alone do we conclude that our appellate review is not meaningfully compromised by counsels' cavalier disregard of rudimentary principles of appellate practice.

the same case requires rejection of Cross–Appellants' arguments.

¶ 4 The law of the case doctrine dictates that upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court. *Commonwealth v. Wallace*, 582 Pa. 234, 870 A.2d 838, 842 n. 2 (2005) (quoting *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). "Under [the] law of the case doctrine, a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter." *Id.*, 870 A.2d at 842 n. 4 (quoting *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422, 425 (1997)). In addition, a judgment by default is *res judicata* and is conclusive in its application to a defaulting defendant. *Zimmer v. Zimmer*, 457 Pa. 488, 326 A.2d 318, 320 (1974). As reiterated by our Supreme Court:

> Once all direct appeals are exhausted from the entry of such a judgment, we long ago concluded that a judgment by default is *res judicata* and quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned.

*Fox v. Gabler*, 534 Pa. 185, 189, 626 A.2d 1141, 1143 (1993) (citing *Zimmer, supra; Devlin v. Piechoski*, 374 Pa. 639, 99 A.2d 346 (1953); *Exler v. Wickes Brothers*, 263 Pa. 150, 106 A. 233 (1919); *Stradley v. Bath Portland Cement Company*, 228 Pa. 108, 77 A. 242 (1910)).

¶ 5 The previous appellate rulings in the instant case determined the following matters conclusively: 1) that Cross–Appellants were not entitled to relief from the default judgment entered against them on July 28, 1995, *see Signora v. Liberty Travel, Inc.*, 718 A.2d 355, No. 2370 PHL 1997 (Pa.Super. April 22, 1998);[5] and 2) that Cross–Appellants were not entitled to relief from the class-wide default judgment entered against them by special order, pursuant to Pa.R.C.P. 1715, on January 22, 1999, *see Signora v. Liberty Travel, Inc.*, No. 298 EDA 2000, 769 A.2d 1218 (Pa.Super. Dec. 4, 2000).[6]

---

5. In that appeal, Liberty phrased its attack upon the validity of the default judgment in three discrete issues, none of which was found to have merit: "1) Are the appellants entitled to relief from the default judgment taken by appellee because it was improperly entered by her on July 28, 1995, in violation of and contrary to the July 21, 1995 and July 25, 1995 letters from her counsel, the terms of which granted [appellants] an extension of time to file an answer to the complaint until August 4, 1995?; 2) Are the appellants entitled to relief from the default judgment in that they acted quickly in raising the issue, explained the reason for not responding initially and raise issues of merit as to the substance of the underlying claim?; and 3) Are the appellants entitled to relief from the default judgment pursuant to the general equitable principles governing the opening of default judgments?" *Signora v. Liberty Travel, Inc.*, No. 2370 PHL 1997, slip op. at 1–2, 718 A.2d 355 (Pa.Super. April 22, 1998).

6. Our rendition of the procedural posture and legal status of the matter at that time was as follows: "Appellants originally attacked the entry of default judgment in 1995 upon the entry of default judgment in favor of Appellee.... On appeal, this Court affirmed the denial of Appellants' petition to open or strike such judgment. Thereafter, this judgment became final upon Appellants' failure to seek further review in 1998. The entry of an order pursuant to Pa.R.C.P. 1715 does not change the finality of the judgment entered in this case as there are no outstanding issues which remain to be determined in favor or against any potential class members. Therefore, Appellants cannot now seek again to open the default judgment which was final in 1998." *Signora v. Liberty Travel, Inc.*, No. 298 EDA 2000, slip op. at 4, 769 A.2d 1218 (Pa.Super. Dec. 4, 2000) (emphasis supplied).

¶ 6 One might have anticipated that, in light of these holdings and the above-cited caselaw, Cross–Appellants would have ceased their efforts to avoid the effects of the default judgments which had been entered against them. Yet, despite having been told in 2000 by this Court that they "cannot now seek again to open the default judgment which was final in 1998," *id.* at 4, and having been so reminded of this holding again in 2004, *see Signora v. Liberty Travel, Inc.,* 846 A.2d at 146, Cross–Appellants nevertheless are brazenly proceeding in this appeal to attempt to achieve precisely the same relief which they have consistently been denied since 1998. Their third issue raised in the instant appeal is a direct, frontal assault on the two default judgments, and it may be summarily dismissed as without merit on the basis of both *res judicata* and the law of the case.[7] Liberty's bold assertion that "there is no precedent for treating a default judgment based solely upon a failure to answer as resolving issues that are purely questions of law"[8] is particularly baffling in light of caselaw cited by the trial court in its opinion which supports this very proposition. Had Cross–Appellants perhaps reviewed with a keener eye the legal precedent relied upon by the trial court, their consternation on appeal would

have been considerably lessened. The trial court cited *Zimmer, Devlin, Exler,* and *Stradley, supra,* all of which involved the entry of a default judgment upon a defendant's failure to take necessary action to challenge the allegations in a complaint and none of which involved entry of a default judgment as a sanction for a discovery violation.[9]

¶ 7 It is Liberty's spurious and unsound distinction between default judgments entered as a sanction for discovery violations and those entered for failure to respond[10] to a complaint that is both unsupportable and untenable. This Court is not bound by decisions of the Commonwealth Court, *see Mother's Restaurant, Inc. v. Krystkiewicz,* 861 A.2d 327, 338 (Pa.Super.2004), and we find its decisions cited by Liberty not to be persuasive on this issue. The two extra-jurisdictional cases cited by Liberty[11] in support of its argument regarding the purported limited effect of a failure to answer, in fact were situations where the default judgment was entered as a sanction for a discovery violation. However, one of those cases does provide a most succinct articulation of the appropriate disposition of the instant claim to relief from the effects of the default judgments:

7. Our analysis parts company, as well, with that employed by the dissent, as the dissent focuses upon the effect of a default judgment when challenged by a petition to open and the direct appeal from the denial thereof. The cases cited by the dissent pertain to *direct appeals* from the denial of a petition to open a default judgment, such as the appeal before this Court in 1998, and do not address the issue before us currently, *to wit*, the effect of *res judicata* and law of the case principles upon a collateral challenge to the entry of a default judgment.

8. (Cross–Appellants' Brief at 25).

9. The dissent equally ignores the import of the above-cited cases as they relate to the

application of principles of *res judicata* and law of the case in the context of default judgments. *See* Dissenting Statement at 3 n. 2. The dissent's sweeping rejection of the relevancy of *Fox v. Gabler* on the basis that it involved a discovery sanction fails to account for the prior precedential decisions which involved entry of default upon failure to respond to the allegations of a complaint.

10. (Cross–Appellants' Brief at 30).

11. *Rajneesh Foundation International v. McGreer,* 303 Or. 139, 734 P.2d 871 (1987) and *Productora e Importadora de Papel, S.A. de C.V. v. Fleming,* 376 Mass. 826, 383 N.E.2d 1129 (1978).

Our holding today, however, does not mean that a default judgment is subject to collateral attack on the ground that the pleadings were insufficient to support it. Once the judgment has been entered and the time for appeal has expired, the defaulting party has no recourse unless the trial court lacked jurisdiction to enter the judgment.

*Rajneesh*, 734 P.2d at 874 n. 3. Accordingly, because the attack upon the instant default judgments is collateral in nature (the unappealed decision of this Court on April 22, 1998, constituted the ruling on direct appeal) and no party has made a claim that the trial court lacked jurisdiction, we conclude that Liberty is wholly without recourse to avoid the binding nature of the prior rulings of this Court regarding the finality of the default judgments.

¶ 8 Cross–Appellants attempt to present issues one, two, and four with slightly more subtlety in that they set forth challenges to the merits of the Appellant's claims without directly challenging the validity of the default judgments. We are unable, however, to fathom any colorable basis upon which Cross–Appellants could maintain that these issues survive in light of our prior holdings. As the above discussion has made clear, the existence of the default judgments and the finality thereof[12] preclude any re-examination on collateral appeal of the legal merits of the defenses which Liberty would have liked to raise. Liberty's argument to the contrary is rejected. Accordingly, we express no opinion either as to the propriety of the application of the time and a half provisions of the Pennsylvania Minimum Wage

Act ("MWA") and the Wage Payment and Collection Law ("WPCL") *vel non* or as to the existence of a cause of action for wrongful termination on behalf of Appellant.

¶ 9 We turn our attention next to Cross–Appellants' challenge to the award of attorneys' fees to Appellant's counsel. An award of attorneys' fees to a prevailing plaintiff is mandatory under the WPCL, but the trial court has discretion with respect to determining the appropriate amount of the fee award. *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148 (1997). Our standard of review, therefore, is whether the trial court abused its discretion in awarding Appellant attorneys' fees in the aggregate amount of $864,067.

¶ 10 The first argument Liberty presents is that no attorneys' fees should be awarded because Appellant and the class are not entitled to overtime as a matter of law. Because we have concluded that the issue of entitlement to the overtime award is a settled matter, *see* discussion above, we find no error in the award of counsel fees on this basis.

¶ 11 The second argument presented is that it was unreasonable as a matter of law to apply a multiplier to the fee award. Cross–Appellants maintain that the trial court failed to consider the weight or relevance of the amount of the class recovery in relation to the amount of the fee award, and that a contingency multiplier of 1.5 should not be applied where an award of attorneys' fees is pursuant to

---

12. As Cross–Appellants admit in their brief, this Court's quashal of the prior appeal at No. 298 EDA 2000 was ordered because the special order granting class-wide relief "did not constitute a separate and new default judgment". (Cross–Appellants' Brief at 36). It still does not constitute a new default judgment and we remain without jurisdiction to exercise *de novo* review of the original default judgment. Our prior ruling constitutes the law of the case.

statute. (Cross–Appellants' Brief at 39–42). We disagree.

**■** ¶ 12 The prevailing party's degree of success is the critical consideration in determining an appropriate fee award. *Logan v. Marks,* 704 A.2d 671, 674 (Pa.Super.1997). While the court may consider the relationship between the damages sought and those actually recovered, it may not lower a fee to achieve proportionality with the size of the verdict. *Id.* Here, the trial court did consider that the "successful results achieved justice in favor of the [c]lass by assuring that their overtime wages were configured as the law required...." (Trial Court Opinion at 29). The fees were awarded only for the time spent on the class claims, as opposed to on Signora's individual claims, and the amount of compensatory damages awarded to the class correlated directly with the amount sought. Although the class also sought but was denied an award of liquidated damages, we conclude that the trial court's refusal to award such was not of significance in its determination of the appropriate amount of attorneys' fees to award.

**■** ¶ 13 As a general rule, the method of determining a fee for legal services provided on an hourly basis is to multiply the total number of hours reasonably expended by the reasonable hourly rate. The resulting figure is known as the 'lodestar' fee, and a court has the discretion to adjust the lodestar fee in light of the degree of success, the potential public benefit achieved, and the potential inadequacy of the private fee arrangement. *Logan v.*

*Marks, supra* at 674.[13] In addition, Rule Pa.R.C.P. 1716, pertaining to the award of counsel fees in class actions, explicitly permits the court to consider the contingent nature of the receipt of a fee in its calculation of an appropriate fee. Pa.R.C.P. 1716(5). Here, the trial court increased the lodestar fee based upon the contingencies and quality of work performed. The court properly considered the lengthy and unending defense challenges to the validity of the default judgment in its consideration of the contingency multiplier. (Trial Court Opinion at 28). Although Cross–Appellants would have us adopt the rule prohibiting an enhancement for contingency under statutory fee shifting provisions,[14] we decline to do so absent clear direction from the Pennsylvania Supreme Court that it would be inclined to follow the United States Supreme Court's lead in its interpretation of federal law. Cross–Appellants have not demonstrated that Pennsylvania would adopt the federal approach in limiting the use of a contingency multiplier to cases other than those under fee shifting statutes. Therefore, we conclude that the trial court did not err or exceed the bounds of the permissible exercise of its discretion in assigning a contingency multiplier of 1.5 to the lodestar fee.

**■** ¶ 14 Next, Cross–Appellants maintain that the trial court should have allowed them to engage in more extensive discovery pertaining to the reasonableness of the hours claimed and the amount of the hourly rate charged by Appellants' counsel. We note that they cite no legal authority for their claim of entitlement to

---

13. In light of the explicit recognition in *Logan v. Marks* of the trial court's discretion to diverge from the calculated lodestar amount in its determination of the ultimate attorneys' fee to be awarded, we fail to understand the dissent's reliance upon this case for the proposition that no multiplier is allowed in the calculation of attorneys' fees. *See* Dissenting Statement at 13–14.

14. Enhancement for contingency is not permitted under federal fee shifting statutes. *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

greater discovery.[15] We agree with the trial court that Cross–Appellants had an adequate opportunity to cross-examine Appellant's counsel at the fee hearing held on September 8, 2003. The fact that defense counsel exercised their prerogative not to cross-examine opposing counsel does not mean that they lacked or were denied the opportunity to do so. It is counsel's responsibility to elicit testimony at the date and time set by the court. We determine that the trial court did not err in refusing to allow further discovery where Cross–Appellants failed to establish a sufficient need therefor.

¶ 15 In support of their general challenge to the award of attorneys' fees on the grounds of excessiveness, Cross–Appellants argue that the affidavit of an attorney in the employ of CSC Risk Management, Claims & Legal Solutions [16] established that Appellant's counsel charged unreasonable rates for services which were either unnecessary or improperly documented. The trial court was under no obligation to afford this evidence determinative weight, and acted well within the proper exercise of its discretion in accepting the testimony of Appellant's counsel and expert as to the reasonableness and necessity of the legal services provided. (Trial Court Opinion at 21–22).

¶ 16 We find particularly bizarre Cross–Appellants' argument against the award of attorneys' fees, that the litigation would have proceeded to judgment more quickly if only Signora would have consented to the opening of the default judgment, and that she should be penalized for defending the class-wide default.[17] The only possible meaning which can be ascribed to this twisted contention is that the successful efforts of Signora and her attorneys in maintaining the integrity of the default judgment throughout more than nine years of litigation at both the trial and appellate levels is, somehow, a bad thing for Signora and the class: In effect, according to Cross–Appellants, winning is actually losing, and the plaintiffs should have adopted the defense strategy and litigated on the merits, i.e., the matter of individual and class-wide entitlement to overtime wages, thus shortening the amount of attorney time required in the litigation. We trust that the mere articulation of this position is sufficient demonstration of the sagacity of the trial court's rejection of it.

¶ 17 Finally, regarding the proper hourly rate to apply, we conclude that the trial court did not err in refusing to limit its consideration of hourly rates to those prevailing in Delaware County only. Cross–Appellants themselves submitted evidence pertaining to rates based on Philadelphia law firm market survey data.[18] In addition, Appellant submitted evidence, including detailed time records and resumes of class lead counsel and co-counsel, to substantiate the trial court's assessment as to the proper hourly rate to use. The trial court was able to determine from its review of the time records that they did not include any work on Signora's individual claim. (Trial Court Opinion at 21–22). Thus, we conclude that the trial court did not err in its determination of the appro-

---

15. (Cross–Appellants' Brief at 42–44).

16. The affidavit which Cross–Appellants submitted was prepared by an attorney admitted to the bar of Pennsylvania in 1988, who has worked for CSC since 1992 performing and supervising audits of law firm invoices.

17. (Cross–Appellants' Brief at 46).

18. (Affidavit and fee schedule for 2001 submitted by a supervising attorney of Community Legal Services in Philadelphia, dated Nov. 20, 2003, R.R. at 262–64.)

priate amount of counsel fees to award, and Cross–Appellants' challenges to the award are without merit.

¶ 18 Based upon the foregoing analysis, we conclude that the trial court committed no abuse of discretion or error of law. Accordingly, we affirm the order appealed at Docket No. 489 EDA 2004 in its entirety.

■■■ ¶ 19 In her appeal at Docket No. 538 EDA 2004, Signora presents the following three issues for review: [19]

1. WHETHER THE LOWER COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION IN REFUSING TO ALLOW THE JURY TO CONSIDER THE AMOUNT OF STATUTORY LIQUIDATED DAMAGES TO BE AWARDED TO SIGNORA AND THE CLASS, IN FINDING THAT THE JURY COULD NOT AWARD BOTH INTEREST AND STATUTORY LIQUIDATED DAMAGES, IN REFUSING TO MOLD THE VERDICT TO AWARD STATUTORY LIQUIDATED DAMAGES TO SIGNORA AND THE CLASS, OR, IN THE ALTERNATIVE, IN REFUSING TO AWARD A NEW TRIAL ON THE ISSUE OF STATUTORY LIQUIDATED DAMAGES?

2. WHETHER THE LOWER COURT ERRED AND/OR ABUSED ITS DISCRETION IN REFUSING TO AWARD A NEW TRIAL SOLELY ON THE ISSUE OF SIGNORA'S DAMAGES FOR PAST LOST EARNINGS AND LOST EARNING CAPACITY, FUTURE LOST EARNINGS AND LOST EARNING CAPACITY, DAMAGED REPUTATION AND LOSS OF OCCUPATIONAL STANDING AND LOSS OF ENJOYMENT OF LIFE, WHERE THE JURY'S DETERMINATION THAT SIGNORA SUFFERED ZERO DAMAGES FOR THESE INJURIES WAS INCONSISTENT WITH THE DEFAULT JUDGMENT, AGAINST THE EVIDENCE AND/OR AGAINST THE WEIGHT OF THE EVIDENCE AND WAS SO CONTRARY TO THE EVIDENCE THAT IT SHOCKS ONE'S SENSE OF JUSTICE?

3. WHETHER THE LOWER COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO INCREASE THE AWARD OF PUNITIVE DAMAGES IN THE AMOUNT OF NINE TIMES SIGNORA'S COMPENSATORY DAMAGES, OR, IN THE ALTERNATIVE, IN REFUSING TO AWARD A NEW TRIAL ON THE ISSUE OF PUNITIVE DAMAGES?

(Appellant's Brief at 5).

■■■ ¶ 20 The substance of Appellant's first issue which we are reviewing is whether the trial court erred in failing to allow the jury to consider an award of liquidated damages, pursuant to 43 P.S. § 260.10. Appellant argues that she and the class are entitled to both pre-judgment interest and liquidated damages. (Appellant's Brief at 12–21). We completely disagree.

¶ 21 This Court has described the purpose and focus of the WPCL as follows:

"Pennsylvania enacted the WPCL to provide a vehicle for employees to enforce payment of their wages and compensation held by their employers." *Oberneder v. Link Computer Corp.*, 449 Pa.Super. 528, 530–31, 674 A.2d 720, 721 (1996), *affirmed*, 548 Pa. 201, 696 A.2d

---

19. We do not treat Appellant's first enumerated issue, "[w]hether the lower court erred and/or abused its discretion in denying appel-

lant's motion for post-trial relief", as it presents no discrete basis upon which to grant appellate relief.

148 (1997). "The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation ·by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages." *Id.*, 674 A.2d at 722. The WPCL "does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement." *Banks Engineering Co., Inc. v. Polons*, 697 A.2d 1020, 1024 (Pa.Super.1997), *appeal granted*, 550 Pa. 715, 706 A.2d 1210 (1998) (citation omitted).

*Hartman v. Baker*, 766 A.2d 347, 352 (Pa.Super.2000). The liquidated damages provision of the WPCL states that when wages remain unpaid for thirty days beyond the regularly scheduled payday and there is no good-faith contest or dispute regarding the wage claim, employees are entitled to claim the greater of 25 per cent of the total amount of wages due or $500 as liquidated damages. 43 P.S. § 260.10.

¶ 22 The provisions of the WCPL are analogous to the protections afforded employees by the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (FLSA), which also provides a mechanism for employee enforcement of minimum wage and wage collection laws. The United States Supreme Court has held that interest and liquidated damages are not both recoverable under the FLSA. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). At least one federal court has determined that liquidated dam-

ages under the WPCL are not available to a successful plaintiff where interest has been awarded pursuant to the MWA. *Friedrich v. U.S. Computer Systems, Inc.*, No. 90–1615, 1995 WL 412385 (E.D.Pa. July 10, 1995).

¶ 23 There is no existing authoritative precedent from Pennsylvania state courts regarding whether liquidated damages, pursuant to section 260.10 of the WPCL, and interest, pursuant to the WPCL and the MWA, may both be awarded. We are in agreement with the result reached by, and we adopt the reasoning of the federal court in *Friedrich, supra*, and conclude that the trial court did not err in restricting recovery to interest under the MWA.[20] The *Friedrich* rationale is persuasive in that both the liquidated damages and prejudgment interest are intended to compensate for the loss of use of the proper amount of wages payable. The fact that the liquidated damages provision under the WPCL predicates such an award upon a showing of a lack of good faith by the employer, does not cause us to view them as being punitive in nature. Rather, because the WPCL also applies to situations involving unpaid wages for reasons other than non-payment of the minimum wage, this provision for liquidated damages applies to instances where interest is not separately awardable.[21] Instantly, however, because Appellant *was* entitled to interest, the additional award of liquidated damages would constitute dual payment, or a windfall. We are not convinced by the non-controlling authority cited by Appellant that our Supreme Court would rule that an employee and the class she repre-

---

20. We note that at the rate of 6 per cent per annum, the award of interest was greater than what Appellant and the class could have expected to receive in liquidated damages at a flat rate of 25 per cent of the total amount of wages due.

21. For example, under the WPCL, the term "wages" includes fringe benefits and wage supplements such as separation pay. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 696 A.2d 173, 175–76 (Pa.Super.1997).

sents are entitled to an award of both interest at the rate of 6 per cent per year of the total amount of wages due and also an award of 25 per cent of the total amount of wages due. Such an award would effectively require an employer to pay the employees twice for the loss of use of the funds due on a timely basis. Therefore, we conclude that the trial court did not err in refusing to instruct the jury that it should award liquidated damages and in refusing to grant a new trial for the purpose of calculating and awarding liquidated damages.

■ ¶ 24 The next issue Signora presents is whether the trial court erred in denying her motion for a new trial on the basis of the jury's returning a verdict omitting any damages for certain categories of loss associated with Signora's claim of wrongful discharge. As noted previously, the jury did return a verdict in favor of Signora on her wrongful termination claim for compensatory damages for the following categories: emotional distress, aggravation, and inconvenience in the amount of $100,000.00, and for embarrassment and humiliation in the amount of $27,479.49. Signora maintains that the jury was *obligated* to award her some amount of damages for past lost earnings and lost earning capacity, future lost earnings and lost earning capacity, damaged reputation and loss of occupational standing, and loss of enjoyment of life. (Appellant's Brief at 21–29). We cannot and do not agree.

■ ¶ 25 Our Supreme Court has directed that:

> [I]t is the duty of the trial court to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do more evenhanded justice between the parties than can an appellate court. Thus, a jury verdict is set aside for inadequacy when it appears to

have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Hence, a reversal on grounds of inadequacy of the verdict is appropriate only where the injustice of the verdict [stands] forth like a beacon.

*Davis v. Mullen,* 565 Pa. 386, 390–91, 773 A.2d 764, 766 (2001) (quotations and citations omitted). The alleged failure of a plaintiff to mitigate damages due to loss of income is an issue for the jury to determine regarding the amount of damages to award. *Collincini v. Honeywell, Inc.,* 411 Pa.Super. 166, 601 A.2d 292, 297 (1991).

¶ 26 In the case *sub judice,* the defense presented evidence from which the jury was free to conclude that Signora did not mitigate either past lost earnings or future lost earnings. The jury was free to conclude that Signora could have obtained substitute employment without any loss of income. We find the following recitation by the trial court to be a succinct summary of the bases upon which the jury could properly have determined that Signora was not entitled to the elements of damages which she insists are her due:

> The record is unassailable that Plaintiff attended college for a number of months following her termination from the Defendant, Liberty Travel, Inc., on February 7, 1995, and that she accepted lower ranking part-time employment at lower pay rates outside of the travel industry for some two years thereafter, whereupon she was hired as a full-time travel agent with Rosenbluth Travel. Plaintiff admitted that she once purposefully withheld from a potential employer that subsequently hired her information that she had been fired by Defendants. Plaintiff asserted that her reason for

doing so was that she personally regarded the termination to be wrongful, and inferentially, illegitimate. Plaintiff listed the Defendant employer on her application nonetheless, and learned after she had been hired by that entity that Defendant had not informed this new employer of the circumstances of Plaintiff's dismissal. Plaintiff testified that she had assumed other employment with the assistance of personal friends where she was not required to submit an application or references in order to obtain it. Indeed, Plaintiff admitted further that it was her own preference not to pursue new employment in the travel industry based on her own embarrassment and reluctance to explain the circumstances of her dismissal, and not the result of any effort or conduct on the part of the Defendants designed to thwart her success in doing so.

(Trial Court Opinion at 38–39) (citations to record omitted). The evidence also established that two weeks prior to her termination, Signora had asked to be re-assigned from full-time employment to part-time employment with Liberty. (N.T., 7/22/03, at 67–68).

¶ 27 The jury did award Signora in excess of $127,000 in compensatory damages for emotional distress, aggravation, inconvenience, embarrassment and humiliation.[22] Although she essentially ignores this recovery in her arguments on appeal, it represents a significant award upon a wrongful discharge claim where the plaintiff was an at-will employee, aged 23 years at the time of discharge, employed for less than two years prior to termination, and who resumed full-time employment in her chosen industry two years after termination. The verdict was clearly in an amount that bore a reasonable relation to the loss Signora suffered, and we conclude that it is not inadequate nor does it constitute an injustice "standing forth like a beacon." *See Davis, supra.*

¶ 28 The final issue Signora raises is whether the trial court erred in not increasing the jury award of punitive damages from $1000 to an amount nine times the compensatory damages, specifically $1,147,315. (Appellant's Brief at 29–36). We conclude that this issue is without merit.

¶ 29 The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others from similar conduct. *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 103, 555 A.2d 800, 803 (1989). An award of punitive damages need **not** bear a reasonable relationship to the amount of compensatory damages awarded. *Id.; Collincini, supra* at 297. The degree of reprehensibileness of the defendant's conduct is the primary indicator of the reasonableness of a punitive damages award. *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 214 (Pa.Super.2003), *appeal denied*, 577 Pa. 723, 847 A.2d 1287 (2004). Punitive damages are awarded for acts committed with a bad motive or with a reckless indifference to the interests of others. *Id.* The amount of an award of punitive damages will not be reversed unless it shocks the conscience of the court. *Id.*

¶ 30 Instantly, Appellant focuses upon Liberty's wealth as evidence of the jury's ignorance or misunderstanding of its duty in determining an appropriate punitive damages award. However, as stated above, it is the level of outrageousness and reprehensibleness of Liberty's conduct

---

**22.** This Court has viewed and continues to view with disfavor jury instructions which separately catalog aspects of pain and suffer-
ing as discrete compensable elements of damages. *Carpinet v. Mitchell*, 853 A.2d 366, 373–74 (Pa.Super.2004).

that is the touchstone of our review. We conclude that the jury's finding that Liberty was liable for some amount of punitive damages did not require that the award of such damages be in any particular amount. It was within the prerogative of the jury to decide whether the wrongful discharge of an at-will employee, aged 23 years at the time of discharge, employed for less than two years prior to termination, who resumed full-time employment in her chosen industry two years after termination, warranted a more substantial punitive damages award. Its verdict indicates that it did not ascribe to Liberty's conduct such a degree of reprehensibility as to require a large amount of punitive damages. As observed by the trial court:

> Plaintiff's position with regard to punitive damages was that Defendants wrongfully fired her in a cold and cruel manner and with the intention of causing her harm in retaliation for questioning their method of paying overtime compensation, and then tried to cover this up with allegedly false evidence that she had been fired for manifesting gross insubordination and a bad attitude during an incident that occurred during her last day on the job. Nevertheless, the purportedly false evidence regarding her conduct was never shown to have manifested itself until Plaintiff's co-workers testified regarding the conduct underlying those charges at the trial! Plaintiff did not deny her involvement in an incident that resulted in a characterization of her conduct as insubordinate, and the jury could well have balanced this evidence in evaluating the character of Defendants' conduct in arriving at its punitive damages award.... In addition, the jury knew that Plaintiff was an at-will employee of Defendants' who could be dismissed from employment without cause and at any time, and weighed the impact of the incident from that per-

spective when deliberating on the question of reprehensibility as well.

(Trial Court Opinion at 43) (citation to record omitted).

¶ 31 On the basis of the foregoing, we conclude that the trial court did not commit legal error or abuse its discretion in declining to increase the amount of punitive damages and in denying Signora's motion for a new trial on the issue of punitive damages. We find that there is no merit to any of the issues raised by either Liberty or Signora that would require the grant of relief on appellate review. We take this opportunity once more to commend the trial court for its thoroughness, both as the presiding officer over the trial and as the arbiter in the first instance of the issues raised post-trial.

¶ 32 Appeal at Docket No. 489 EDA 2004 affirmed.

¶ 33 Appeal at Docket No. 538 EDA 2004 affirmed.

¶ 34 McEWEN, President Judge Emeritus, files a Dissenting Statement.

DISSENTING STATEMENT BY McEWEN, P.J.E.:

¶ 1 Since the opinion of the trial judge reflects a keen judicial insight and provides a persuasive expression of rationale for his decision, and since my astute colleagues of the majority would affirm that decision, I am hesitant to differ, but dissent I must. Essentially, my study of the record compels me to disagree with certain of the conclusions reached by my colleagues, including

(1) the ruling that a default judgment entered by the prothonotary based on the failure to timely file an answer admits not only the factual allegations but also the legal conclusions contained in the complaint;

(2) the finding that appellants' concession that trial was to be conducted solely for the purpose of assessing damages relieved the trial court of the need to determine the nature and type of damages to which the plaintiff and the 243 class members were entitled based on the facts admitted by the default;

(3) the ruling that the failure to appeal from the class certification order filed on June 19, 2002, rendered that decision of the trial court "conclusive"; and

(4) the ruling that the computation of the award of counsel fees was permissible under the law of Pennsylvania.

Thus, I would vacate the judgment and remand.

## 1. EFFECT OF DEFAULT JUDGMENT

¶ 2 The proposition that by virtue of the default judgment entered by the prothonotary due to the failure of appellants to file an answer,[23] the legal conclusions contained in the complaint were finally established has been rejected by quite a number of courts, including this one.[24]

¶ 3 This Court, in *Ehrenzeller v. Chubb*, 171 Pa.Super. 460, 90 A.2d 286 (1952), cogently summarized the relevant law when it wrote:

A rule to strike off a judgment for irregularity on the face of the proceedings is in the nature of a demurrer to the rec-

**23.** The circumstances surrounding the entry of the default judgment were described in the September 30, 1997, opinion of another trial court judge, the late Judge Joseph Battle, as follows:

On July 17, 1995 the plaintiff's attorney mailed to the defendants' [attorney] a ten (10) day notice of an intention to take a default judgment. On July 18, 1995 the defendants' attorney orally requested an extension of time until August 4, 1995, because of a scheduled vacation. The plaintiff's attorney orally agreed to an extension and, on the same day, sent a letter to the defendants' attorney confirming that an extension had been granted until August 4, 1995. The letter further indicated that the extension was for the filing of an answer, only. The letter further demanded that the defendants' law firm enter its appearance by July 27, 1995.

Apparently, the plaintiff's attorney's letter of July 18, 1995 granting the extension of time for the filing of an answer arrived in the offices of the defendants' attorneys on July 24, 1995. Because the attorney handling the case on behalf of the defendants was on vacation, another attorney in the same office faxed a responsive letter to the plaintiff's attorney indicating that the agreement to extend time would not be signed until the attorney returned from vacation. The plaintiff's attorney faxed a letter back agreeing that the agreement to extend could

be signed and the entry of appearance filed on August 4, 1995.

However, in addition to the written communications, the partner of the attorney on vacation spoke to a paralegal in the office of the plaintiff's attorney. He stated to the paralegal that his firm would not be bound by the terms of the extension agreement limiting the filing of the responsive pleading to that of an answer. The partner admitted making such a statement and said he did so because he did not know what the terms of the oral agreement were between the plaintiff's attorney and the attorney who was on vacation.

In light of the disagreement between counsel for the parties as to the terms of the extension, plaintiff's counsel filed a *praecipe* for the entry of a default judgment, which was entered on July 28, 1995.

On appeal to this Court a panel consisting of Judges Sydney Hoffman, Correale Stevens and Michael Eakin affirmed, on the basis of the trial court opinion, the order which had refused to open the default judgment entered in favor of the plaintiff, Ms. Signora. *Signora v. Liberty Travel, Inc.*, 718 A.2d 355 (Pa.Super.1998) (unpublished memorandum). No petition for allowance of appeal was filed.

**24.** The 1993 opinion of Justice Papadakos in *Fox v. Gabler*, 534 Pa. 185, 626 A.2d 1141 (1993) is not here relevant as it was a default judgment entered by the court as a sanction for discovery abuses.

ord. The proceeding is not equitable and *a defendant is not required to answer on the merits if the complaint is not self-sustaining in setting up a good cause of action. A plaintiff's complaint is always open to attack on the ground that it is not self-sustaining,* as a demurrer, when he asks for judgment for want of an answer.

*Id.* at 286–287 (emphasis supplied; citations omitted).

¶ 4 Subsequently, this Court, in *Calesnick v. Redevelopment Authority of the City of Philadelphia,* 365 Pa.Super. 320, 529 A.2d 528 (1987), *appeal denied,* 517 Pa. 629, 539 A.2d 810 (1988), citing prior Supreme Court, Superior Court, and Commonwealth Court cases, held that a default judgment based on a failure to timely file an answer to a complaint admits *only* the factual allegations of the complaint:

The [appellant] contends that the lower court erred in denying its petition to strike the default judgment because the complaint failed to set forth a cause of action. We agree. A petition to strike a judgment may be granted only if defects appear on the face of the record. *Franklin Interiors v. Wall of Fame Management,* 510 Pa. 597, 599, 511 A.2d 761, 762 (1986); *Malakoff v. Zambar, Inc.,* 446 Pa. 503, 506, 288 A.2d 819, 821 (1972).

In *Frankel v. Donehoo,* 306 Pa. 52, 158 A. 570 (1931), our Supreme Court stated that A DEFAULT JUDGMENT DOES NOT ADMIT THE SUFFICIENCY OF THE PLEADING TO SUSTAIN A JUDGMENT, NOR DOES IT ADMIT THAT THE FACTS AS STATED CONSTITUTE A CAUSE OF ACTION. *Id.,* 306 Pa. at 57, 158 A. at 572. Our Courts have held that if the complaint fails to state a cause of action, the default judgment entered thereon should be stricken. *See Rosser v. Cusa-*

*ni,* 97 Pa.Superior Ct. 255 (1929). In *Commonwealth, Dept. of Environmental Resources v. Allias,* 20 Pa.Commonwealth Ct. 222, 341 A.2d 226 (1975), the Court stated that "[e]ven though a judgment is entered, as here, if the face of the record shows the same to be baseless, the court should strike it off." *Id.* at 226, 341 A.2d at 228 (citing *Constable v. Andrews,* 297 Pa. 285, 146 A. 899 (1929)). *See also Wilkinsburg Borough v. School District,* 298 Pa. 193, 202, 148 A. 77, 81 (1929); *Alderfer v. Pendergraft,* 302 Pa.Superior Ct. 210, 215, 448 A.2d 601, 604 (1982); *Roberts v. Gibson,* 214 Pa.Superior Ct. 220, 225, 251 A.2d 799, 802 (1969).

*Calesnick v. Redevelopment Authority of the City of Philadelphia, supra,* 529 A.2d at 529–530 (emphasis supplied). *Accord: Miernicki v. Seltzer,* 312 Pa.Super. 166, 458 A.2d 566, 568 (1983), *affirmed,* 505 Pa. 323, 479 A.2d 483 (1984).

¶ 5 "The rules permitting the entry of default judgments were designed to prevent a dilatory defendant from unreasonably thwarting plaintiff's efforts to establish a claim. They were not intended to provide the plaintiff with a means of gaining a judgment without the difficulties which arise from litigation." *Miller Block Co. v. U.S. Nat'l Bank,* 389 Pa.Super. 461, 567 A.2d 695, 701 (1989), *appeal denied,* 525 Pa. 658, 582 A.2d 324 (1990). *Accord: ABG Promotions v. Parkway Publishing, Inc.,* 834 A.2d 613, 618 (Pa.Super.2003).

¶ 6 Some of the other jurisdictions which have considered this issue have likewise concluded that a default judgment entered as a result of a failure to timely plead to a complaint does not concede the existence of a viable cause of action. *See, e.g.: Cripps v. Life Ins. Co. of North America,* 980 F.2d 1261, 1267 (9th Cir.1992); *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978); *Nishimatsu Construction Co. v.*

*Houston National Bank,* 515 F.2d 1200, 1206 (5th Cir.1975); *Moore's Federal Practice,* § 55.12[1] (3d ed.1997); *Skanchy v. Calcados Ortope SA,* 952 P.2d 1071, 1076 (Utah 1998); *American Towers Owners Assoc. v. CCI Mechanical, Inc.,* 930 P.2d 1182, 1194 (Utah 1996); *Wiseman v. Stocks,* 527 So.2d 904, 906 (Florida 1st DCA 1988).

¶ 7 The Oregon Supreme Court, in so ruling, cited a 1975 opinion written by our Pennsylvania Commonwealth Court in support of its ruling that a default judgment does not admit the legal conclusions contained in the complaint:

> Defendant argues that the effect of the default order was to admit not only the truth of the facts alleged in the counterclaims, but also that the alleged actions were illegal and caused injury. She argues that the only issue properly before the trial court judge was the measure of damages, and that the trial court erred in considering plaintiffs' motion to dismiss after the order of default had been entered.
>
> We disagree. According to the great weight of authority, a default establishes only the truth of the factual allegations contained in the complaint and does not admit that the facts alleged constitute a valid claim for relief. Under this view, the trial court has no authority to award damages against a defaulting defendant if the complaint fails to state a cause of action. *See ... Pennsylvania Dep't of Environmental Resources v. Allias,* 20 Pa.Cmwlth.222, 341 A.2d 226 (1975) (default judgment does not admit the sufficiency of the pleading to sustain the judgment, nor does it admit that the facts alleged constitute a cause of action).

> \* \* \* \* \* \*

> The rule suggested by defendant would allow her to recover damages even if it is apparent on the face of her pleading that she has suffered no legally cognizable injury. A default judgment, no less than any other judgment, must have a basis in the pleadings. The trial court acted within its authority in considering the legal sufficiency of defendant's counterclaims.

*Rajneesh Foundation International v. McGreer,* 303 Or. 139, 142–144 734 P.2d 871, 873–874 (1987) (most citations omitted).

¶ 8 The Utah Court of Appeals, in applying the majority rule on the effect of such a default judgment amusingly, but astutely, observed:

> Were the rule otherwise, a court asked to enter judgment by default would be obligated to do so in a case where a complaint sought damages for defendant's "refusal to share her recipes with her neighbors, including plaintiff." But such is not the case. Defendant's failure to answer and ensuing default would require the court to accept the factual allegations as true, but the court would enter judgment as requested only if it determined those facts established an actionable claim.

*Stevens v. Collard,* 837 P.2d 593, 596 n. 5 (Utah Ct.App.1992), *modified on other grounds,* 863 P.2d 534 (Utah Ct.App.1993).

¶ 9 Similarly, the United States Court of Appeals for the Fourth Circuit explained the effect, under the Federal Rules of Civil Procedure,[25] of a default entered for failure to timely plead to a complaint:

25. The federal courts rely on notice pleading, as distinguished from Pennsylvania's fact pleading. *See:* Fed.R.Civ.P. 8(a). That distinction permits of no variation of view in the consequences of a default judgment.

The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.... As the Supreme Court stated in the "venerable but still definitive case" of *Thomson v. Wooster*: a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill." The defendant is not held ... to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) (quoting *Thomson v. Wooster*, 114 U.S. 104, 113, 5 S.Ct. 788, 29 L.Ed. 105 (1885)) (internal quotations and other citations omitted). **The court must, therefore, determine whether the well-pleaded allegations in Appellants' complaint support the relief sought in this action.** *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F.Supp. 1138, 1141 (E.D.N.C.1986), *aff'd*, 822 F.2d 56 (table), 1987 WL 36124 (4th Cir.1987). For the purpose of this decision, the complaint alleges, the default establishes, and the parties agree that the fair market value of the property is $179,000, that the amount owed to the holder of the first deed of trust is $181,876, and that the amount owed to the holder of the second deed of trust is $47,305.46. **The district court correctly concluded that acceptance of these undisputed facts does not necessarily entitle the Appellants to the relief sought; in this** case, stripping off the second deed of trust. *Nishimatsu*, 515 F.2d at 1206. *Ryan v. Homecomings Financial Network*, 253 F.3d 778, 780–781 (4th Cir.2001) (emphasis supplied).

¶ 10 Thus it is that I am obliged to opine that while the default judgment precluded Liberty from contesting the facts of the complaint, including the allegations that the claimants were not fully paid overtime when they worked in excess of forty hours per week, the default

- Does not admit that the facts of the complaint constitute a cause of action,
- Should not be treated as a confession of liability, and
- Does not establish the claimant's right to recover.

## 2. LEGAL ENTITLEMENT TO DAMAGES

¶ 11 Accepting, as we must, the fact that the default judgment was, on its face, validly entered upon defendants' failure to timely respond to the plaintiff's complaint, which thereby conclusively established the facts pleaded therein, the legal issue still to be resolved by the trial court was whether the use of the fluctuating work week method of payment by the Liberty violated the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101–333.115, or, by extension, the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 *et seq.*

¶ 12 Both the federal Fair Labor Standards Act and the Pennsylvania Minimum Wage Act use the term "regular rate" without defining the term,[26] and both statutes require that overtime (hours worked in excess of 40 hours in a week) be paid at one and one-half times the regular hourly rate. The United States Supreme Court

26. *See:* 43 P.S. § 333.104(c).

has determined that use of the fluctuating work week meets the requirements of the Federal Fair Labor Standards Act. *See: Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). While a number of appellate courts have also approved the use of the fluctuating work week concept under their respective state laws,[27] Pennsylvania has not yet addressed the issue. This issue is, of course, one of substantial importance to the laboring citizens of this Commonwealth, as well as to its employers. However, I am, most respectfully, of the view that in order to award damages to Ms. Signora and to the members of the class, where the complaint averred that overtime wages had not been fully paid by Liberty to the members of the class, the trial court was obliged to first determine if the facts averred in the complaint set forth a violation of Pennsylvania law requiring an award of overtime pay or, more specifically, whether implementation of the fluctuating work week concept was in satisfactory compliance with the Pennsylvania statute, for, only after such a determination, could damages be awarded to Ms. Signora and the class. In the absence of any such determination by the esteemed trial judge, I am of the mind that damages for overtime wages could not be lawfully awarded to the class.

### 3. APPEALABILITY OF CLASS CERTIFICATION

¶ 13 In the instant case, the default judgment was entered due to the failure of Liberty to timely answer the Ms. Signora's complaint. While Signora in the complaint sought relief on her own behalf and that of the putative class, that default judgment was enforceable solely as to the individual plaintiff, Signora, for two reasons: (1) because no class had yet been certified, and (2) because Pa.R.C.P. 1715 prohibits the entry of a default judgment in a class action except by special order of the court. As a consequence, Signora and the other putative plaintiffs subsequently moved, on August 19, 1998, pursuant to the special order provisions of Pa.R.C.P. 1715, for the entry of the default judgment in favor of the class. That motion was granted by order dated January 22, 1999, and appellants filed a petition to open or strike the order entering the default judgment in favor of the class. That petition was denied by the trial court by order dated December 30, 1999. When Liberty then filed an appeal to the Superior Court, Signora filed a motion to quash the appeal on the basis that the order was interlocutory, not appealable as of right. This Court agreed, holding that "as this is not an appeal from a final appealable order, we are constrained to quash this appeal." *Signora v. Liberty Travel,* 769 A.2d 1218 (Pa.Super.2000) (unpublished memorandum, filed December 4, 2000).

¶ 14 The majority here adopts the view of the eminent trial judge that this prior review and quashal by this Court determined "conclusively ... that Cross Appellants [*i.e.,* Liberty] were not entitled to relief from the class-wide default judgment entered against them by special order." *Signora v. Liberty Travel, Inc.,* 886 A.2d 284, 290 (Pa.Super.2005). As I, most respectfully, see it, however, the prior decision of this Court was founded upon the

---

**27.** States deciding this issue in favor of adopting the fluctuating work week concept include: *Samson v. Apollo Resources, Inc.,* 242 F.3d 629 (5th Cir.2001), *cert. denied,* 534 U.S. 825, 122 S.Ct. 63, 151 L.Ed.2d 31 (2001) (La.law); *Goodrow v. Lane Bryant, Inc.,* 432 Mass. 165, 732 N.E.2d 289 (2000); *Young v. State,* 195 Or.App. 31, 96 P.3d 1239 (2004), *review granted,* 338 Or. 57, 107 P.3d 626 (2005); *Inniss v. Tandy Corp.,* 141 Wash.2d 517, 7 P.3d 807 (2000).

well established rule that an order approving certification of an action as a class action is not a final and appealable order. *See: Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 96–97, 321 A.2d 906, 908 (1974); *Piltzer v. Independence Federal Savings and Loan Association*, 456 Pa. 402, 319 A.2d 677 (1974); *Foust v. SEPTA*, 756 A.2d 112, 116 n. 3 (Pa.Cmwlth.2000), *appeal denied*, 565 Pa. 652, 771 A.2d 1289 (2001); 3 *Standard Pennsylvania Practice 2d* § 14:104. *See also: Debbs v. Chrysler Corp.*, 810 A.2d 137 (Pa.Super.2002), *appeal denied*, 574 Pa. 744, 829 A.2d 311 (2003). Thus, Liberty's present challenge to that certification order, filed as it is after judgment has been entered against it, is timely. However, since Liberty has focused its challenge on the propriety of the underlying default judgment and whether it should have been entered against the class, rather than whether the class itself should have been certified, it has not offered any persuasive arguments that the trial court erred in certifying the class.

¶ 15 Nonetheless, I am of the mind that the order of January 22, 1999, which purported to apply the default judgment to the class, was null and void since no class had been certified at that point—indeed, the order certifying the class was not entered until more than three years later on June 19, 2002. As I see it then, since the default judgment of January 22, 1999, in favor the class was null and void, and since no judgment was entered in favor of the class after it was certified on June 19, 2002, there was no properly entered judgment in favor of the class, and, therefore, it was error to conduct a trial upon the damages claims of the class.

### 4. AWARD OF COUNSEL FEES

¶ 16 Finally, I am compelled to the view that there is no provision in Pennsylvania law for the application of a multiplier to an award of statutory attorney fees. This Court made clear in an insightful opinion of my esteemed colleague, Judge Justin M. Johnson in *Logan v. Marks*, 704 A.2d 671, 675 (Pa.Super.1997), that interest on attorney fees is not permitted unless specifically authorized by statute. Legal scholars might counsel that it is unbecoming to apply simple logic in so complex an appeal, but it strikes me that if the lesser and rather routine sanction of interest upon a statutory attorney fee is not permitted, surely it follows that the greater sanction of a multiplier is not allowed unless the General Assembly so declares.

¶ 17 Thus set forth are the bases of this dissent.